[No. 8663–1–III.   Division Three.   June 16, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LYNDA
ANDERSON, *Petitioner.*

*Barbara King Lachmar* and *Irwin, Friel & Myklebust,*
for petitioner.

*James H. Kaufman, Prosecuting Attorney,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* amici curiae for respondent.

McINTURFF, C.J.—The District Court dismissed a driving–while–intoxicated charge against Lynda Anderson, holding that the trooper who arrested her made an unlawful stop of her vehicle. The Superior Court reversed, and we accepted discretionary review.

On May 29, 1986, Trooper Art Lothrop was traveling north on Highway 195 out of Colfax when he saw Wayne Ristau, a juvenile probation and parole officer, driving a car in the opposite direction and waving at him as if something was wrong. Trooper Lothrop made a U–turn and followed Mr. Ristau who was pointing out the window at the Volkswagen ahead of him. As the trooper started by him, Mr. Ristau gestured "like a snake . . . going back and forth." Trooper Lothrop followed the Volkswagen for about one–quarter of a mile, observed the driver weave within her own lane, then stopped her. Apparently, before he approached the Volkswagen, he talked to Mr. Ristau who had pulled in behind him. Mr. Ristau told him the Volkswagen had been over the center line and had been weaving considerably. The driver was Lynda Anderson, and, after smelling intoxicants, Trooper Lothrop arrested her for driving under the influence.

Ms. Anderson moved to suppress the evidence gained in the stop. At the suppression hearing, Trooper Lothrop testified concerning the tip by Mr. Ristau and his own observations of Ms. Anderson's driving:

> [Mr. Ristau's gestures] told me there was something wrong with the vehicle ahead of him . . . that there was something out of line or something that gives him alarm to notify me . . .
>
>     . . .
>
> It didn't enter my mind as like some criminal type of activity, cuttin coke or shootin out the window or something like that, I just thought there was something wrong with the driving part of it.
>
>     . . .

. . . [S]he was weaving mostly in her own lane . . .

. . .
. . . [I]t could have been any number of reasons why [she was weaving] . . . not necessarily just a drinking driver. It could have been someone tired. It could have been lost, trying to read a map, light a cigarette . . .

. . .
I wouldn't classify it as that erratic, as far as wandering back and forth in her own lane, no.

The District Court suppressed the evidence, reasoning:

[Trooper Lothrop] couldn't draw any conclusion from [what he had observed]. . . . [T]he nature of the tip, here, really wasn't very much. . . . [W]hen you consider the nature of the information that was provided by the motioning and a little bit of weaving, which didn't amount to an infraction or criminal activity . . . *Campbell* [*v. Department of Licensing,* 31 Wn. App. 833, 644 P.2d 1219 (1982)] . . . to me, says, that isn't enough to make a stop. . . . It isn't an objective fact from which anyone could reasonably conclude that there was . . . criminal conduct taking place.

The State appealed to the Superior Court, which reversed. In its memorandum opinion, the court stated:

It seems to the Court that the gestures made by the probation officer were equivalent to a verbal communication to the effect that "the car ahead is weaving in a sufficiently unusual manner that it seems something must be wrong". . . . The fact that the gestures were a weaving motion conveyed in demonstrative fashion the facts supporting the observer's conclusions. So, it appears the question then becomes, is a statement by an observer to an officer, to the effect that the car ahead is weaving from side to side, sufficient, in itself, to justify a brief investigatory stop by the officer?

The Court believes the answer to that question is yes . . .

First, Ms. Anderson contends the Superior Court impermissibly substituted its own findings of fact for those of the District Court. Specifically, the District Court stated in its oral opinion that "the nature of the tip, here, really wasn't

very much."[1] In contrast, the Superior Court viewed Mr. Ristau's gestures as "equivalent to a verbal communication that 'the car ahead is weaving in a sufficiently unusual manner that it seems something must be wrong'".

"If a determination concerns whether evidence shows that something occurred or existed, it is properly labeled a finding of fact, but if the determination is made by a process of legal reasoning from facts in evidence, it is a conclusion of law." *State v. Niedergang,* 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986). Here, the facts in evidence are that Mr. Ristau pointed at the Volkswagen and made a motion "like a snake . . . going back and forth." Those facts are not disputed. But whether those facts justified the investigatory stop is a determination made by a process of legal reasoning. The Superior Court differed from the District Court on the law, not the facts. Thus, we reject Ms. Anderson's assertions that the Superior Court disregarded the District Court's *findings.*

Second, Ms. Anderson assigns error to the Superior Court's conclusion that the trooper conducted a valid investigatory stop of her vehicle.

Since the report came from an identified citizen informant, Trooper Lothrop properly concluded the source of his information was reliable. *State v. Kennedy,* 107 Wn.2d 1, 8, 726 P.2d 445 (1986); *State v. Huft,* 106 Wn.2d 206, 211, 720 P.2d 838 (1986); *State v. Riley,* 34 Wn. App. 529, 532, 663 P.2d 145 (1983). Ms. Anderson does not contend otherwise.

But, "reliability by itself generally does not justify an investigatory detention." *State v. Sieler,* 95 Wn.2d 43, 48, 621 P.2d 1272 (1980). A reliable informant's tip which is

---

[1]The District Court made an oral ruling following the hearing on the motion to suppress the evidence. No formal findings were ever entered. Unlike CrR 3.6 which requires the entry of *written* findings, CrRLJ 3.6(b) provides that: "After the hearing, the court shall state its findings of fact and conclusions of law as to the admissibility or inadmissibility of the evidence." Here, the District Court's oral opinion and the record provide a sufficient basis for our review.

merely a bare conclusion unsupported by a sufficient factual basis or uncorroborated by independent police observation is not enough to allow the State to detain and question an individual. *Sieler,* at 48.

It was the lack of either a factual basis for the tip or independent police corroboration thereof that caused the court in *Campbell v. Department of Licensing,* 31 Wn. App. 833, 644 P.2d 1219 (1982) to suppress evidence seized in the stop of the defendant's vehicle. There, a passing motorist yelled to a state trooper that a drunk driver in a certain described vehicle was southbound on the highway. The trooper made a U–turn, spotted the defendant's vehicle, followed it for a while, but observed nothing abnormal. Nevertheless, he stopped the defendant and found that he appeared under the influence. The court held the tip itself was conclusory, making it impossible to assess its accuracy, and also was uncorroborated by the trooper's observations. *Campbell,* at 835. Hence, the stop was improper.[2]

The situation here is distinguishable from *Campbell.* Unlike the informant in *Campbell,* Mr. Ristau made more than a conclusory statement. His tip was that the driver of the indicated vehicle was operating it in a manner that caused him concern, and he provided an underlying factual justification for his tip by gesturing that he had observed

___

[2]The amicus brief is highly critical of *Campbell.* However, we could find no language in *Campbell* applying a probable cause standard to the stop, as the amicus contends. Nor do we conclude, as amicus does, that *Campbell* advocates the least intrusive alternative method. The United States Supreme Court has stated: "[W]e have never required police to adopt alternative measures to avoid a legitimate *Terry*–type intrusion." *Michigan v. Long,* 463 U.S. 1032, 1052 n.16, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983). *Campbell,* at 836 n.2, states in connection with its conclusion that the tip was uncorroborated by the trooper's observations, only that drunk driving is not a readily concealable offense. As for *Campbell's* alleged failure to recognize the danger to the public posed by drunk driving, the amicus again treads on thin ice. In fact, *Campbell* states, at page 837:

> We agree that the seriousness of the suspected criminal conduct is a relevant consideration in the reasonableness calculus, *e.g., State v. Lesnick,* [84 Wn.2d 940, 944–45, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975)], but there must still exist some measure of objective fact from which the conclusion of criminal conduct can reasonably be derived.

the vehicle weaving. Even without supplementation by the trooper's own observations or Mr. Ristau's later statements, this communication gave rise to a well founded articulable suspicion that the driver's operation of the vehicle posed a danger to herself or others using the roadway. That suspicion was sufficient to warrant the trooper's investigatory stop. *White v. State Dep't of Pub. Safety,* 606 P.2d 1131, 1132 (Okla. 1980).

■ Ms. Anderson relies on Trooper Lothrop's own testimony that he wasn't sure what was wrong; it could have been anything. However, "[w]hether a constitutional violation has occurred turns on an objective assessment of the officer's actions . . . not on the officer's actual state of mind . . ." *State v. Petty,* 48 Wn. App. 615, 620, 740 P.2d 879, *review denied,* 109 Wn.2d 1012 (1987) (citing, *inter alia, Maryland v. Macon,* 472 U.S. 463, 470–71, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985)). An officer is not required to rule out all possibilities of innocent behavior before initiating a brief stop and request for identification. *United States v. Poitier,* 818 F.2d 679, 683 n.2 (8th Cir. 1987), *cert. denied,* ___ U.S. ___, 98 L. Ed. 2d 651, 108 S. Ct. 700 (1988); *United States v. Holland,* 510 F.2d 453 (9th Cir.), *cert. denied,* 422 U.S. 1010 (1975).

> Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.

(Footnote omitted.) *Holland,* at 455.

Accordingly, we hold the investigatory stop was proper, and the evidence obtained thereby is admissible.

The judgment of the Superior Court is affirmed.

GREEN and THOMPSON, JJ., concur.