247 P.3d 782 (2011)
STATE of Washington, Respondent,
v.
Bryan J. WEBER, Petitioner.
No. 28192-2-III.
Court of Appeals of Washington, Division 3.
February 3, 2011.
*784 Douglas Dwight Phelps, Phelps & Associates, P.S., Spokane, WA, for Petitioner.
Andrew Kelvin Miller, Brendan Michael Siefken, Terry Jay Bloor, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
KORSMO, A.C.J.
¶ 1 The district and superior courts disagreed on the legal conclusion to be drawn from the trial court's findings on a suppression hearing. This court granted discretionary review to determine if the superior court applied the appropriate standard in its appellate review. While we are uncertain what standard was applied, we agree with the superior court's determination that the evidence did not support the district court's legal conclusion that a pretext stop occurred and affirm.

FACTS
¶ 2 Washington State Patrol Trooper Steve Shiflett saw Bryan J. Weber drive his car out of an apartment complex at about 2:53 a.m. He noticed that the car entered the street without stopping before crossing over a sidewalk. Trooper Shiflett then paced Mr. Weber's car for about three blocks. Mr. Weber drove 47 m.p.h. in a 35 m.p.h. zone.
¶ 3 Trooper Shiflett pulled the car over. Mr. Weber's eyes were bloodshot and watery and he smelled like alcohol. Mr. Weber agreed to perform field sobriety tests, but did not perform them well. The trooper arrested him for driving under the influence (DUI) and transported him to the jail. Breath tests showed Mr. Weber's breath alcohol level to be .115 and .118. Trooper Shiflett cited Mr. Weber for DUI, but did not cite him for the traffic infractions.
¶ 4 Mr. Weber moved to suppress the evidence obtained following the stop. He argued that the traffic stop for speeding and failure to stop was a pretext to investigate his possible driving under the influence. The matter was heard before a judge pro tempore. Trooper Shiflett was the only witness called by the prosecution at the hearing.[1] The trooper testified that he stopped Mr. Weber's vehicle for traffic infractions but is always on the lookout for DUIs when on duty:
JOHNSON [prosecutor]: What was the reason for the stop?
. . . .
SHIFLETT: The combination of traffic violations. The failing to stop before the sidewalk and the speeding.
. . . .
PHELPS [defense attorney]: What time of night was this.
SHIFLETT: I don't recall, oh, yeah, it was right before I was going home. 2:53 is when the stop happened.
PHELPS: A.M.?
SHIFLETT: Yes.
PHELPS: Was there any people out on the street as far as pedestrians?
SHIFLETT: I didn't indicate but there's not very many at 3:00 in the morning in that area.
PHELPS: Alright. Were there very many cars on the street?
SHIFLETT: I don't recall any other cars on the street.
. . . .

*785 PHELPS: And part of your duties is DUI enforcement?
SHIFLETT: Yes.
PHELPS: Were you working a special detail [the] night of this incident?
SHIFLETT: No.
PHELPS: And were you looking for DUI's?
SHIFLETT: Yes.
PHELPS: And it's not uncommon for people to be drinking and driving late at night, is it?
SHIFLETT: Very common.
PHELPS: And part of what you do as a state trooper is look for DUI's.
SHIFLETT: Yes.
PHELPS: Did that play a part in stopping this particular defendant?
. . . .
SHIFLETT: I would have stopped him for those violations if it was at noon. The hour didn't make any difference, no.
. . . .
JOHNSON: . . . was DUI the basis for this stop?
SHIFLETT: I guess I don't know how to clarify that. I'm always looking for DUI's at all hours every time I work. I'm always on the look out for that, but, the reason for the stop was traffic violations.

Clerk's Papers (CP) at 38-45 (emphasis added).
¶ 5 The district court took the matter under advisement. The court subsequently issued a written ruling that concluded that the stop was pretextual and granted the suppression motion. The district court entered five findings of fact: (1) the trooper[2] testified he was looking for DUIs at the time he observed Mr. Weber; (2) the trooper testified that he observed Mr. Weber fail to stop at the crosswalk while leaving an apartment complex in violation of RCW 46.61.365; (3) the trooper did not immediately stop Weber; (4) the trooper paced him for three blocks at 48 m.p.h. in a 35 m.p.h. zone before stopping him; (5) the officer did not cite for the traffic infractions, but did cite for DUI. CP at 2, 34.
¶ 6 From these findings, the court entered four conclusions of law: (1) the trooper "was not motivated by a perceived need to make a community caretaking stop aimed at enforcing the traffic code," (2) "the traffic violations were not the real reason for the stop," (3) "the stop was an unlawful pretext stop," and (4) the motion to suppress was granted and all evidence was suppressed. CP at 3, 35.
¶ 7 The district court entered an order that the practical effect of the suppression order was to terminate the case. The State then appealed the ruling to the superior court pursuant to the Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ). The superior court reviewed the district court transcript and the briefing of the parties. After hearing argument, the superior court reversed the district court. Its oral remarks discussed the factual basis for the stop before deciding that a pretext stop had not occurred. The written superior court ruling simply stated that there was "sufficient evidence introduced to reverse the Findings of Fact entered October 17, 2008," and reversed the district court order suppressing the evidence. CP at 56.
¶ 8 Mr. Weber sought discretionary review from this court on the issue of whether or not the superior court applied the appropriate standard of review in the RALJ process. One of this court's commissioners denied review. A divided panel modified that ruling and accepted discretionary review.

ANALYSIS

RALJ Standards
¶ 9 Mr. Weber contends that the superior court applied the wrong legal standard of review. He argues that the proper test is whether substantial evidence supports the district court's findings, not whether substantial evidence supported reversal. His argument is correct as far as it goes.
¶ 10 RALJ 9.1 governs appellate review by a superior court of a decision of a district court. State v. Ford, 110 Wash.2d 827, 829-830, 755 P.2d 806 (1988); State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d *786 354 (1997). RALJ 9.1(a) states that the superior court reviews the lower court ruling to determine if there are any errors of law. In the course of its review, the superior court "shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction." RALJ 9.1(b). The superior court does not consider the evidence de novo. State v. Basson, 105 Wash.2d 314, 317, 714 P.2d 1188 (1986).
¶ 11 These rules likewise apply to appellate courts that grant discretionary review of a superior court's RALJ decision. Ford, 110 Wash.2d at 829, 755 P.2d 806; State v. Jim, 156 Wash.App. 39, 41, 230 P.3d 1080, review granted, 170 Wash.2d 1001, 245 P.3d 226 (2010). Appellate courts also will treat mislabeled findings or conclusions in accord with what they actually are. Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986).
¶ 12 We consider Mr. Weber's challenge with these standards in mind. He rightly complains that the focus of the superior court should have been on whether the evidence supported the district court's findings. The superior court's written ruling is not very helpful. To the extent it can be read as determining its own facts, the ruling would run afoul of RALJ 9.1(b). We are not sure that is what actually happened however. Part of the problem is that the district court made only a few factual findings and they do not squarely touch on why this was a pretext stop. It appears from the first two conclusions of law that the district court did not accept the trooper's testimony that he stopped the car because of the observed violations. The trial court did not make any express statement about the trooper's credibility, nor did it squarely find what motivated him to make the traffic stop. While we have an obligation to reasonably infer facts from the trial court's judgment, it is difficult to determine what should be inferred here. Perhaps it could be inferred that the officer was motivated by something other than enforcing the speeding law, although there is not much in the record to support such an inference. To go any further and infer a specific motivation, however, fails on two accounts. First, nothing in the record would support such an inference, and a reviewing court must only infer facts that have substantial evidentiary support in the record.[3] RALJ 9.1(b). Second, it is a long-recognized logical fallacy to draw an affirmative conclusion from a negative premise. I. Copi & C. Cohen, Introduction to Logic, at 277-278 (10th ed., Prentice Hall, 1998); J. Brennan, A Handbook of Logic, at 79-81 (2d ed., Harper & Row, 1961). Thus, even if a reviewing court infers that the trial court factually found the trooper was not motivated to enforce the traffic law, it is not in a position to infer what the motive actually was.
¶ 13 In light of the court's oral remarks, a more plausible interpretation is that the superior court concluded that the factual findings did not support the legal conclusion that a pretext stop occurred. Our commissioner read the record that way.[4] While that reading is a fair one for the oral remarks, it is hard to square with the written ruling's statement that there was "sufficient evidence to reverse" the suppression order.
¶ 14 This court sits in the same position as the superior court in review of the district court decision. Ford, 110 Wash.2d at 829, 755 P.2d 806. The parties have argued the merits of the pretext ruling throughout the appeal process. In that circumstance, this court is able to review the merits of the suppression ruling. There is no reason to further interpret the superior court decision because the merits must ultimately be addressed.

Pretextual Stop
¶ 15 The issue, then, is whether the district court correctly concluded that the *787 stop was pretextual. Pretextual traffic stops violate the Washington State Constitution's article I, section 7. State v. Ladson, 138 Wash.2d 343, 348, 979 P.2d 833 (1999). "A pretextual stop occurs when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." State v. Nichols, 161 Wash.2d 1, 8, 162 P.3d 1122 (2007). If a stop is pretextual, all evidence following the stop must be suppressed. State v. Montes-Malindas, 144 Wash.App. 254, 259, 182 P.3d 999 (2008).
¶ 16 The court should consider "the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wash.2d at 359, 979 P.2d 833. The failure to issue a citation for a traffic infraction is one factor to be considered but is not dispositive. State v. Minh Hoang, 101 Wash.App. 732, 742, 6 P.3d 602 (2000), review denied, 142 Wash.2d 1027, 21 P.3d 1149 (2001). An officer need not issue a citation. Nichols, 161 Wash.2d at 14, 162 P.3d 1122. An officer's candid admission to pretextual conduct is more probative than the denial of the conduct. Montes-Malindas, 144 Wash.App. at 261, 182 P.3d 999.
¶ 17 Mr. Weber relies nearly exclusively upon Montes-Malindas, a case that involved a classic pretextual traffic stop. There, the arresting officer saw a van with three occupants parked outside of a Walgreen's store. 144 Wash.App. at 257, 182 P.3d 999. The officer immediately suspected nontraffic criminal activity. Id. He surveyed the van and its occupants from an adjacent parking lot. Id. When the van exited the parking lot without turning on its headlights, the officer followed and later stopped the van. Id. The officer admitted that the suspicions of criminal activity were probably on his mind when he decided to stop the van. Id. at 261, 182 P.3d 999. This court concluded that the stop was pretextual after considering the totality of the circumstances, including both the subjective intent of the officer and the objective reasonableness of his behavior. Id. at 262, 182 P.3d 999.
¶ 18 Montes-Malindas was similar to the other cases where pretext stops have been foundpolice officers suspecting criminal behavior used a stop for a traffic infraction to investigate a possible crime rather than the noncriminal traffic infraction. E.g., Ladson, 138 Wash.2d at 345-347, 979 P.2d 833 (gang detectives stopped vehicle for traffic infraction in order to investigate drug dealing); State v. DeSantiago, 97 Wash.App. 446, 983 P.2d 1173 (1999) (officer watching narcotics trafficking building stopped car to identify driver who left the location); State v. Myers, 117 Wash.App. 93, 69 P.3d 367 (2003) (officer who suspected driver's license was suspended stopped vehicle for traffic citations while awaiting record check on license status), review denied, 150 Wash.2d 1027, 82 P.3d 242 (2004); State v. Meckelson, 133 Wash.App. 431, 135 P.3d 991 (2006) (counsel ineffective for not challenging stop where officer who suspected vehicle might have been stolen made traffic stop for infractions), review denied, 159 Wash.2d 1013, 154 P.3d 919 (2007).
¶ 19 In contrast, a patrol officer who makes a traffic stop in the course of his patrol duties does not commit a pretext stop merely because there is reason to believe that other criminal activity is afoot. In Nichols, an officer saw a car pull into a parking lot, slowly drive around, and then returned to the street. In doing so, the car crossed over to the far lane instead of into the closest lane. Suspecting that the driver did not want to drive in front of the patrol car, the officer went in pursuit and activated his lights immediately upon catching up to the car. 161 Wash.2d at 4-5, 162 P.3d 1122. The court concluded that there was no basis for finding a pretext stop. There was no evidence that the officer was performing anything other than routine patrol duties when he observed what he thought were traffic infractions. Id. at 12, 162 P.3d 1122. It was objectively reasonable for the officer to stop to investigate the turning violation. Id. at 12-13, 162 P.3d 1122. The fact that the officer did not cite for the infraction also did not turn the stop into a pretext. Id. at 14, 162 P.3d 1122.
¶ 20 An earlier case reached a similar result. Minh Hoang, 101 Wash.App. 732, 6 *788 P.3d 602. There a patrol officer was observing a neighborhood known for drug transactions. At 4:00 a.m., the defendant drove up in a car, briefly stopped and talked to one group of people standing near the street, and then drove forward to do the same with another group. Suspecting that the driver was attempting to purchase drugs, but seeing no evidence that any drugs had been exchanged, the officer waited. The car stopped for a stop sign, but then turned without signaling. The officer immediately turned on his lights and made a traffic stop. Id. at 734-735, 6 P.3d 602.
¶ 21 The trial court found that the officer would have made the stop even if he had not observed the suspicious behavior and determined that it was not a pretext. The Court of Appeals affirmed. The court expressly noted:
Under Ladson, even patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop. What they may not do is to utilize their authority to enforce the traffic code as a pretext to avoid the warrant requirement for an unrelated criminal investigation.
Id. at 742, 6 P.3d 602.
¶ 22 This case most closely fits the Nichols fact pattern. The trooper was on traffic patrol, which is the normal job description of most troopers. He had not seen Mr. Weber before and had no specific suspicion of criminal activity by Mr. Weber. As in Nichols, traffic violations were committed in the trooper's presence during the dark of night and he promptly acted upon seeing those violations.[5] These are not the facts of a pretext stop.
¶ 23 The trooper was doing his job as a patrol officer. While he was always on the lookout for lawbreaking, including people driving while under the influence, that fact does not mean that everyone Trooper Shiflett stops is the subject of a pretext stop. It is expected that patrol officers are looking out for improper activity. Under petitioner's theory, any officer who came upon a car weaving all over the road would be making a pretext stop simply because the officer expected to find an impaired driver behind the wheel. That theory turns training and experience into a basis for not enforcing the law.
¶ 24 As in both Nichols and Minh Hoang, the trooper was not conducting an investigation unrelated to traffic offenses.[6] It was objectively reasonable for him to stop a car driving through a residential area at 48 m.p.h. in the middle of the night. Thus, even if we go further than the trial court and infer that a factual finding had been made that Trooper Shiflett was not enforcing the traffic code, it is not sufficient to find a pretext stop. Under Ladson, both the subjective intent of the officer and the reasonableness of the stop must be considered before finding a pretext. Ladson, 138 Wash.2d at 359, 979 P.2d 833. This was a reasonable stop. In light of the nonexistence of an improper motive, there is no basis for finding that this traffic stop was a pretext.
¶ 25 The traffic stop was valid. We affirm the superior court ruling that remanded the case for trial.
¶ 26 Affirm.
I CONCUR: BROWN, J.
SWEENEY, J., (dissenting).
¶ 27 The decision that a traffic stop is pretextual turns on a couple of factors, including the officer's subjective motive for the stopwas his true motive a traffic stop or did he suspect, and want to investigate, other criminal activity. Here, the district court found "[t]hat the traffic violations were not the real reason for the stop" and suppressed the evidence gathered following that stop. Clerk's Papers (CP) at 35. The superior *789 court found that the officer was motivated to stop the defendant because of traffic infractions and there was then "sufficient evidence introduced to reverse the Findings of Facts" and reversed the district court's decision to suppress. CP at 56. I would conclude that the superior court applied the wrong standard of review; improperly weighed the evidence; and I would reverse and reinstate the decision of the district court suppressing the evidence.
¶ 28 Here the district court judge entered what was labeled a conclusion of law that the traffic violations were not the real reason the trooper stopped Mr. Weber. CP at 35. The court also found that the trooper "was not motivated by a perceived need to make a community caretaking stop aimed at enforcing the traffic code." CP at 3.

PRETEXTUAL STOP
¶ 29 A pretextual stop, as the name implies, "occurs when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code." State v. Nichols, 161 Wash.2d 1, 8, 162 P.3d 1122 (2007). A warrantless traffic stop based on a pretext does not fall within any exception to the general requirement of a warrant, violates article I, section 7 of the Washington Constitution and, therefore, lacks the authority of law. Id. at 8-9, 162 P.3d 1122.
¶ 30 The court must consider "`both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior.'" State v. Montes-Malindas, 144 Wash.App. 254, 260, 182 P.3d 999 (2008) (quoting State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999)). The failure to issue a citation for a traffic violation is a factor[1] and, appropriately so, since it bears upon the officer's subjective intent.

STANDARD OF REVIEW
¶ 31 The superior court sat in an appellate capacity when it reviewed the decision of a district court and therefore reviews for errors of law only. RALJ 9.1. The superior court was not then privileged to revisit the district court's findings of fact. City of Seattle v. Hesler, 98 Wash.2d 73, 79, 653 P.2d 631 (1982). Indeed, "[t]he superior court shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction." RALJ 9.1(b). We, likewise, sit in an appellate capacity. Spokane County v. Bates, 96 Wash.App. 893, 896, 982 P.2d 642 (1999). That means that we will review for errors of law only and defer to the district court's assessment of the evidence, including the credibility of the witnesses who testified. RALJ 9.1(a); State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
¶ 32 To apply the proper standard of review, it is important to identify what findings of fact the district court made and what conclusions of law it made. In doing so, we can, and do, ignore the district court's characterization of a finding or a conclusion, as such, and instead apply the proper analytical criteria. State v. Marcum, 24 Wash.App. 441, 445, 601 P.2d 975 (1979).
¶ 33 A finding is any assertion that something happened, or exists, or was done or was thought; a finding is independent of any legal effect or consequence. State v. Anderson, 51 Wash.App. 775, 778, 755 P.2d 191 (1988). A conclusion of law, on the other hand, follows a process of legal reasoning from the findings. Id. It represents the legal consequences that follow those facts. Lanzce G. Douglass, Inc. v. City of Spokane Valley, 154 Wash.App. 408, 418, 225 P.3d 448 (2010).

DISTRICT COURT'S FINDINGS AND CONCLUSIONS
¶ 34 The district court judge here sat as the trier of fact. That means that the credibility of witnesses was a matter vested in the district court judge, not the superior court and not us. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
*790 ¶ 35 The judge found "[t]hat the traffic violations were not the real reason for the stop of Bryan Weber." CP at 35. That finding is denominated a conclusion of law, but it is not. Anderson, 51 Wash.App. at 778, 755 P.2d 191; State v. Minh Hoang, 101 Wash.App. 732, 741, 6 P.3d 602 (2000). From this, the judge concluded, as a matter of law, that "the stop of Bryan Weber was an unlawful pretext stop." CP at 35. The court's finding supports the court's conclusion of law that the stop was "an unlawful pretext stop." The State invites us to review the conclusion "pretextual stop" de novo. But the question instead is whether the court's finding as to the trooper's real motive for this stopDUI (driving under the influence of an intoxicant) investigationis supported by substantial evidence. State v. Johnson, 115 Wash.App. 890, 898, 64 P.3d 88 (2003).
¶ 36 Mr. Weber contends the superior court impermissibly substituted its own findings of fact for those of the district court. He argues that it was the court's substitution of the wrong standard of review (de novo) that resulted in the court putting itself in the position of the trier of fact.
¶ 37 Specifically, the district court found that the traffic violations were not the real reason for the stop. The superior court concluded that there was "sufficient evidence introduced to reverse the Findings of Facts entered October 17, 2008." CP at 56. But that is not the test. And the superior court's discussion suggests that it disagreed with the district court's finding, not its conclusion, and went on to make its own finding:
[W]hile I'm bothered that the uh underlying infractions were not actually cited . . . that's discretionary. And uh as I read the transcript, while the officer testified that he was looking for DUI's, he did not indicate that he was assigned a particular special detachment to look for DUI's that evening uhm, he was not in an area where, that in fact he testified that he would be looking for DUI's whether it was noon or any other time of the day. That he had witnessed or observed the defendant pull out of a parking lot that uh he did not stop at the crosswalk, and then most troubling is that he paced him and found him to be uh exceeding the speed limit by twelve or thirteen miles an hour. And it was because of that that he actually uh stopped the defendant. Nowhere in his testimony did he indicate that while he's always looking for traffic infractions, he's always looking for DUI's, that's his obligation as a law enforcement officer. So I uh will grant the prosecutor's motion and remand this back for further proceedings.
Report of Proceedings (April 22, 2009) at 6 (emphasis added). The superior court's finding as to the trooper's motive for the stop here is contrary to the finding made by the court charged with making that findingthe district court. The superior court then overstepped its proper role as a court of review. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
¶ 38 The trooper testified that he was always on the lookout for DUIs, which he considered part of his general duties. He did not cite Mr. Weber for the infractions he saw. The test is not whether we would have found a different motive for the stop. The question is whether there is sufficient evidence, which if believed, would support the district court's finding on the factual question of motive. Nw. Pipeline Corp. v. Adams County, 132 Wash.App. 470, 475, 131 P.3d 958 (2006). The standard is modest, and, of course, that standard is met here.
¶ 39 I would then reverse the decision of the superior court and affirm the district court's suppression order.
NOTES
[1] Mr. Weber testified briefly at the hearing that he did stop before turning onto the street, but did not know how fast he traveled. Clerk's Papers (CP) at 40-41.
[2] The trooper was identified as "Officer Shiflett" in the district court's ruling.
[3] It is possible that the superior court's written ruling referring to the facts was a determination that the record did not support the district court's factual findings, although that appears to be a stretch on this record.
[4] See Commissioner's Ruling, at 5 (Wash. Ct. App., July 27, 2009).
[5] Mr. Weber argues that he was followed for three blocks before the traffic stop. The trooper testified he was pacing Mr. Weber to determine his speed. Traveling three blocks at nearly 50 m.p.h. does not take a great deal of time. A mere three-block pace is not evidence that the stop was a pretext.
[6] That would be the case even under Mr. Weber's theory since the DUI statutes are found in the traffic code, chapter 46.61 RCW.
[1] State v. Minh Hoang, 101 Wash.App. 732, 742, 6 P.3d 602 (2000).