**FILED**
**OCTOBER 12, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 36220-5-III |
| CLARA V. LARSON, | ) | |
| | ) | |
| Deceased. | ) | |
| | ) | |
| CONNIE M. MITCHELL, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORMAN D. LARSON, Personal | ) | |
| Representative of the Estate of Clara V. | ) | |
| Larson, and Successor Trustee of Gordon | ) | |
| E. Larson Testamentary Trust, | ) | |
| | ) | |
| Appellant. | ) | |

No. 36220-5-III
*In re Estate of Larson*

SIDDOWAY, J. —This is a second appeal of a property dispute over which we retained jurisdiction. The first appeal was decided in *In re Estate of Larson*, No. 36220-5-III (Wash. Ct. App. Dec. 17, 2019) (unpublished).[1]

Norman Larson and Connie Mitchell are brother and sister and beneficiaries under a trust created under the will of their father, Gordon Larson.[2] Gordon predeceased Clara Larson, his wife and Norman's and Connie's mother. Upon Clara's death, Norman became the personal representative of Clara's estate and successor trustee of Gordon's trust. Gordon's trust assets included 240 acres of land in Spokane County. Much of the acreage was adjacent to land that Clara left to Norman in her will.

Disputes over division of the 240 acres were resolved by a bench trial of consolidated probate and TEDRA[3] proceedings. Among other findings, the trial court found that Norman's actions as personal representative and successor trustee fell below the standard of care. It arrived at a division of the trust property and ordered it distributed.

Norman appealed the outcome of the bench trial and in our unpublished opinion we affirmed the trial court on all but one ground. The trial court had partitioned the trust's real property in a manner different from that proposed by either party and without

---

[1] Https://www.courts.wa.gov/opinions/pdf/362205_unp.pdf.
[2] Given the common last name of several of the actors, they will be referred to by their first names for clarity. No disrespect is intended.
[3] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

2

making findings as to its value. We found it impossible to review Norman's challenge to

the division without more specific findings. We remanded for the entry of additional

findings, retaining jurisdiction in order to expedite review in the event of a further appeal.

On remand, the trial court reviewed submissions, heard argument from the parties,

and made supplemental findings that identifed how it valued the property and reasons for

the manner in which it distributed it. In our prior opinion, we illustrated property issues

using a rough depiction of the tax parcels at issue, and we return to that depiction, adding

the values found by the trial court. Norman was awarded the shaded property and Connie

was awarded the unshaded property based on the values indicated. The parcels are

identified by the last four digits of their tax parcel numbers:



Thus distributed, the total value of land distributed to Norman was $228,333 and the total value of land distributed to Connie was $251,667.  The trial court's findings and conclusions state that in addition to arriving at a division that it found to be just and equitable, the court sought to promote clear boundaries.

Norman appeals.

ANALYSIS

Norman assigns error to six of the trial court's findings of fact and one of its conclusions of law.  He characterizes the trial court's supplemental finding of fact 54 as a mislabeled conclusion of law.  He also assigns error to the trial court's alleged failure to comply with our instructions.

We can address this last alleged error summarily.  In explaining why we were remanding, we observed that not only were there no findings regarding the value of the property distributed, but the trial court also distributed the property in a manner different from the parties' proposals without "explaining the variations, and whether, and to what extent, those variations were viewed by the trial court as benefitting one or the other party." *Larson*, slip op. at 25.  We did not say that findings explaining variation from the parties' proposals are required, and they are not; such findings would have served as a substitute for values.  By identifying values used and adjustments made, the trial court's

4

findings and conclusions on remand comply with our remand for additional findings

adequate for review.

We address Norman's first five challenges to findings of fact before turning to his

challenges to the sixth finding of fact and the conclusion of law.

I.      SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S CHALLENGED FINDINGS OF
        FACT

Norman contends the trial court's supplemental findings of fact 42, 44, 45, 46, and

48 are arbitrary and capricious.  Whether a finding is arbitrary and capricious is not the

standard of review.[4]  Rather,

> [F]ollowing a bench trial, appellate review is limited to determining
> whether substantial evidence supports the findings of fact and, if so,
> whether the findings support the conclusions of law. *State v. Stevenson*,
> 128 Wn. App. 179, 193, 114 P.3d 699 (2005).  "Substantial evidence" is
> evidence sufficient to persuade a fair-minded person of the truth of the
> asserted premise. *Id.*  We treat unchallenged findings of fact and findings
> of fact supported by substantial evidence as verities on appeal. *Schmidt v.
> Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990).  We
> review challenges to a trial court's conclusions of law de novo. *State v.
> Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

---

[4] Whether findings are "arbitrary and capricious" is relevant in reviewing agency decisions, not trial court decisions, as demonstrated by the cases relied on by Norman for this standard. *See e.g.*, *State ex rel. Tidewater-Shaver Barge Lines v. Kuykendall*, 42 Wn.2d 885, 891, 259 P.2d 838 (1953) (review of civil service commission); *Pierce County Sheriff v. Civil Serv. Comm'n of Pierce County*, 98 Wn.2d 690, 658 P.2d 648 (1983) (same); *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955) (review of board of county commissioners), *overruled on other grounds by Fleming v. City of Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972).

*State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Since the trial judge has the witnesses before it and can evaluate, first hand, the weight and credibility of testimony, we will not substitute our judgment on these matters even when we might have resolved a factual dispute differently. *State v. Russell*, 73 Wn.2d 903, 910, 442 P.2d 988 (1968); *Brown v. Super. Underwriters*, 30 Wn. App. 303, 305-06, 632 P.2d 887 (1980). In determining whether substantial evidence supports the trial court's findings, we view all reasonable inferences from the evidence in the light most favorable to the prevailing party. *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (citing *Sunderland Fam. Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995)).

Partition is an equitable action. *Kelsey v. Kelsey*, 179 Wn. App. 360, 365, 317 P.3d 1096 (2014) (citing *Leinweber v. Leinweber*, 63 Wn.2d 54, 56, 385 P.2d 556 (1963)). "The trial court has 'great flexibility' in fashioning equitable relief for the parties." *Id.* (quoting *Cummings v. Anderson*, 94 Wn.2d 135, 143, 614 P.2d 1283 (1980)). The trial court's discretion extends to its valuation of property in a partition action. *Id.* (citing *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 206, 580 P.2d 617 (1978)). Its discretion in valuing property includes reimbursing a cotenant for improvements she or he has made to property, including "by the sweat of [their] brow," and discounting the

6

value of the property for, e.g., encumbrances.  *Id.* at 365-66.  A court abuses its discretion

if its decision is based on untenable grounds or untenable reasons.  *Id.* at 365.

We address the challenged supplemental findings of fact in turn.

*Finding of fact 42.*  Supplemental finding of fact 42 states:

> *Tax Parcel [ ].9009 is contiguous to parcels owned by/farmed for Norman
> D. Larson and creates a large tract (approximately 320 acres), increasing
> the value of this Tax Parcel ownership and the value of the other,
> previously owned Tax Parcels ([ ].9007, [ ].9008, and [ ].9006).*

Clerk's Papers (CP) at 551-52 (emphasis added).  Norman does not dispute that land he

inherited from Clara wraps around parcel .9009, creating a large, rectangular, 320 acre

tract of farm ground.  He challenges finding 42 on the sole basis that "there was no

*testimony* that the value of [parcel ].9009 is increased merely because it is located

adjacent to [parcels ].9007 and [ ].9008 and [ ].9006."  Suppl. Appellant's Br. at 4

(emphasis added).  He argues that testimony by Stephen Barrett, a real estate broker he

called as a witness on issues of value, "was only that the value of that parcel was

$140,000."  *Id.*

In fact, Connie testified that "[t]here is a value related to having a contiguous

piece of property, versus having a patchwork division."  Report of Proceedings (RP)

(Trial) at 88-89.  And both common sense and the fact that Norman *asked* that he be

awarded parcel .9009 support the inference that there was some enhanced value to having

7

contiguous farm ground.  Notably, the trial court still relied on Mr. Barrett's value of

$140,000 in making the property division.  Substantial evidence supports the finding.

> *Finding of fact 44.*  Supplemental finding of fact 44 states:
>
> *Valuation of Tax Parcel [ ].9006 by Stephen L. Barrett failed to consider that some portion of the parcel's worth was the preservation of the home on said Tax Parcel over the years by Connie M. Mitchell with the knowledge of Clara Larson.*

CP at 552 (emphasis added).

As recounted in our earlier opinion,

> Connie testified that she had lived in what the parties agreed was a 100-year-old house on parcel .9006 off and on since 1992.  She testified she had improved the parcel by building two barns and remodeling the house.  She had also almost finished drilling a well on the parcel and, as of the time of trial, had spent about $30,000 on that improvement.  She testified that the house was in poor condition following a partial collapse of the foundation that had prevented her from using the furnace for heat since January.  She had received an estimate from a contractor that it would cost $20,000 to repair the foundation.

*Larson*, slip op. at 9-10.  Connie testified that all told, she put over $70,000 in materials

into the house, and did much of the labor herself.  She had asked the trial court to award

her parcel .9006, and it did.

Mr. Barrett had valued 40-acre parcel .9006, together with .9008, the 40 acres

south of it, at $265,000.  As illustrated above, the trial court assigned those two parcels a

combined value of $230,000, valuing parcel .9006, with its home, at only $100,000.

Finding 44 reflects the trial court's reasoning that it was reasonable in valuing the

property to recognize Connie's investment in preserving its improvements and distribute it to her at a reduced value.

Norman does not dispute that in valuing parcel .9006 Mr. Barrett failed to consider Connie's investment in its improvements. His only challenge to finding 44 is that Connie "identified Trial Exhibit 19 as handwritten notes showing her mother . . . paid for the improvements to the house," implying that the investment was not Connie's, but Clara's. Suppl. Appellant's Br. at 5.

The record does not support the suggestion that the amounts Connie testified *she* invested in the improvements were made by her mother. In fact, Connie explicitly denied that. Asked by Norman's lawyer, "[Y]ou've talked about making improvements to the house and surrounding grounds. The funds that you received to do that came from your mother, correct?," Connie answered, "No." RP (Trial) at 102. Connie testified that the improvements *she* made, and trial exhibit 19, which reflected some improvements *Clara* made, "are two separate issues." *Id.* at 103. Viewing the evidence in the light most favorable to Connie, substantial evidence supports supplemental finding 44.

> <u>*Finding of fact 45.*</u>  Supplemental finding 45 states:
>
> *Valuation of the Tax Parcel [ ].9006 by Stephen L. Barrett also failed to consider the damage to Connie M. Mitchell's home which would require repair to support the Assessor's opinion of improvement valuation of $93,400 or result in a burden to any potential purchaser equal to the cost of demolition of the home.*

CP at 552 (emphasis added).

9

Mr. Barrett testified during his direct examination by Norman's lawyer that he had taken damage to the foundation of Connie's home into consideration in the values he provided in a report he prepared for the lawyer. But Mr. Barrett also testified that he did not know what the cost to repair the damage would be, since he "wasn't supplied with any contractor-type estimates or anything." RP at 162. He added, "I think I made a comment in [the report] that the—it's possible that the cost to repair it might be as much as the value of the house." *Id.* In fact, his report said the following about the need for repairs:

> The existing house is over 110 years old, and appears to have significant deferred maintenance. The recent collapse of a portion of the foundation, as cited in the engineer's report, raises questions about the structural integrity of the building as a whole—it should be noted that the porch on the north side of the house which covers the grade level basement access also appears to be unstable, and may be hazardous. It is also understood that the house was a rental property for many years, and there have been modifications which do not appear to be up to code. While the home is generally in livable condition, and a new roof was recently installed, the overall condition of the property is considered to be substandard and well below average.
>
> . . . .
>
> While it is possible that a prospective buyer might try to renovate the existing house, the cost of renovation and repair is expected to be substantial. Depending on the condition of the footings, extent of the foundation collapse, and requirements for renovation, it is possible that the renovation cost could exceed the contributory value of the house in the 'as is' condition.

Ex. R104, at 9-10.

Mr. Barrett apparently considered it consistent to say that he took the damage into consideration in valuing the property while at the same time admitting that a buyer would face substantial unknown costs of repair that could exceed the value of the house. The trial court's finding 45 faults Mr. Barrett for giving insufficient weight to prospective buyers' concerns about the cost of repair.

It was the trial court's role as trier of fact to determine the weight to give Mr. Barrett's opinion,[5] and in an unchallenged finding, the trial court observed that Mr. Barrett is not an appraiser and neither party presented evidence of highest and best use or development. Mr. Barrett's concessions in his report that a buyer faced unknown, presumably substantial costs to repair, provided a basis for the court to discount his opinion of value. Substantial evidence supports the finding.

*Finding of fact 46.* Supplemental finding 46 states:

*Stephen L. Barrett did not provide testimony about valuation of the parcels as finally configured by the Court in this Order.*

CP at 552 (emphasis added). Mr. Barrett provided Norman's lawyer with a broker's price opinion "for the property as a whole, as well as in separate parts according to the

---

[5] As jurors are instructed in jury trials, the finder of fact is not required to accept an expert's opinion, and in discounting its weight may consider, among other things, "the education, training, experience, knowledge, and ability of the witness" as well as "the reasons given for the opinion and the sources of his or her information." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL § 2.10, at 55 (7th ed. 2019).

11

proposed distribution." Ex. R104, at 3. Norman's proposed distribution was different

from the distribution arrived at by the trial court. Mr. Barrett later provided Norman's

lawyer with two other division options. Those, too, were different from the division and

distribution ordered by the trial court. The finding that none of the property division

options valued by Mr. Barrett was the division and distribution ordered by the court is

fully supported by the record.

> *Finding of fact 48.* Supplemental finding 48 states:
>
> *The value of Tax Parcel [ ].900[6][6] is @$100,000 based upon the testimony of Stephen L. Barrett and the damage to Connie M. Mitchell's home that rendered it unlivable at the time of trial.*

CP at 552 (emphasis added).

Norman challenges finding 48 on the basis that it is not consistent with Mr.

Barrett's report or opinion. We view the evidence in the light most favorable to Connie,

however. At the October 30, 2017 trial, Connie testified that due to the damage to the

home, she had been unable to use her furnace for heat since January. It was reasonable

for the court to infer that as winter approached, an inability to heat the home rendered it

unlivable—and of course, Mr. Barrett's own report questioned the structural integrity of

the building as a whole and noted that a porch appeared to be unstable, and may be

hazardous. Unchallenged finding 34, a verity on appeal, states, "No one disputed that the

---

[6] Paragraph 48 was amended to correct a scrivener's error.

No. 36220-5-III
*In re Estate of Larson*

house which Connie M. Mitchell had been using as her home was damaged when a tower

wall collapsed, damaging the furnace and causing the residence to be unsafe." CP at 551.

The trial court's valuation of parcel .9006 at $100,000 is supported by the trial

court's derivation of a starting value of $132,500 from Mr. Barrett's valuation of

combined parcels .9006 and .9008, *see* CP at 552, reduced for Connie's own investment

in the property and the cost of needed repairs.

II.     THE TRIAL COURT'S CONCLUSIONS OF LAW ARE SUPPORTED BY ITS EXPRESS AND
        IMPLICIT FINDINGS

Norman's remaining assignments of error are to the trial court's find of fact 54,

which he contends is more fairly characterized as a conclusion of law,[7] and its conclusion

of law J.

*Finding of fact 54.* Supplemental finding 54 states:

*The distribution/partition of the parcels is equitable.*

CP at 553 (emphasis added).

*Conclusion of law J.* Conclusion of law J states:

---

[7] A finding is any assertion that something happened, or exists, or was done or was thought; a finding is independent of any legal effect or consequence. *State v. Weber*, 159 Wn. App. 779, 793, 247 P.3d 782 (2011) (Sweeney, J., dissenting) (citing *State v. Anderson*, 51 Wn. App. 775, 778, 755 P.2d 191 (1988)). "A conclusion of law, on the other hand, follows a process of legal reasoning from the findings" and "represents the legal consequences that follow those facts." *Id.* (citing *Lanzce G. Douglass, Inc. v. City of Spokane Valley*, 154 Wn. App. 408, 418, 225 P.3d 448 (2010)).

> *Rather than award attorney fees, the Court is entitled to award a disproportional distribution of property when, as here, one party was entrusted with a fiduciary duty as set forth above and failed in the exercise of that duty.*

CP at 554 (emphasis added).

If the trial court's findings of fact are supported by substantial evidence, the next question is "whether the findings in turn support the trial court's conclusions of law and judgment." *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978). The substance of Norman's remaining challenge is that the trial court has not provided an understandable explanation for its decision.

We have determined that substantial evidence supports the trial court's attribution of values. Based on those values, the trial court awarded Norman a total property value of $228,333 and awarded Connie a total property value of $251,667—about $23,300 more than Norman.

Several findings and conclusions have no purpose unless to explain this relatively small disparity between the values awarded.

The trial court's original findings 19 through 32 and 35 detailed conduct of Norman and his first attorney that the trial court concluded, in its conclusions of law E and G, unreasonably breached Norman's fiduciary duties owed as successor trustee. The trial court's original conclusion F states, "This Court has discretion to award reasonable attorney fees and costs in an amount and manner that it deems equitable . . . after

considering any and all factors that the Court deems to be relevant and appropriate." CP at 462. In our unpublished opinion, we upheld the trial court's conclusion that positions taken by Norman and his counsel breached his duty as a trustee. *Larson*, slip op. at 16-21.

> A clearly related supplemental conclusion of law, conclusion J, states:

> Rather than award attorney fees, the Court is entitled to award a disproportional distribution of property when, as here, one party was entrusted with a fiduciary duty as set forth above and failed in the exercise of that duty.

CP at 554.

Norman recognizes that this conclusion implies that the $23,300 discrepancy in value adjusts for expense incurred by Connie as a result of his fiduciary breaches, the finding of which we previously affirmed. He recognizes this because he argues that fiduciary breaches were limited to actions by his first lawyer that took place over a period of only 13 days and could not account for a $23,300 adjustment. Suppl. Appellant's Br. at 8. As Connie correctly responds, the trial court found ongoing breaches of Norman's fiduciary duty. Not only did Norman originally assert a right to the trust's entire 240 acres, but his delay in valuing the property forced a TEDRA action, and he continued to assert a right to substantial rental amounts from Connie. *See* CP at 549-51 (findings 19-32, 35). Connie testified at trial that as of that point in time she had expended around

$30,000 in attorney fees.  A finding that the attorney fees established in the record accounted for the slightly disproportional distribution of property is implicit.

The trial court's conclusions of law are supported by its findings.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.

16