162 P.3d 1122 (2007)
STATE of Washington, Respondent,
v.
Caleb George NICHOLS, Petitioner.
No. 78497-3.
Supreme Court of Washington, En Banc.
Argued March 15, 2007.
Decided July 19, 2007.
*1123 Carol A. Elewski, Tumwater, WA, for Petitioner.
Kevin Michael Korsmo, Andrew J. Metts III, Spokane County Prosecutor's Office, Spokane, WA, for Respondent.
MADSEN, J.
¶ 1 Petitioner Caleb George Nichols was convicted of possession of methamphetamine. He maintains that his trial counsel was ineffective for failing to move to suppress evidence obtained following a stop of the vehicle in which he was a passenger. Nichols argues that the stop was pretextual and thus negates his subsequent consent to the search of his person that resulted in discovery of methamphetamine hidden in his sock. The Court of Appeals affirmed his conviction. We affirm the Court of Appeals.

FACTS
¶ 2 The parties stipulated to the facts set out in police reports describing the events occurring just after midnight on November 17, 2003. Deputy Sheriff Shawn Hause was parked in a parking lot at about Francis Avenue and Haven Street in North Spokane when he saw a vehicle going westbound on Francis Avenue from Market Street. He saw the vehicle pull into another parking lot, drive slowly around the lot, and exit the same way it entered, back onto Francis Avenue. He wrote in his report:
As it exited the parking lot, it crossed a double yellow line and pulled immediately into the far right lane in the EB [eastbound] lane. It appeared to me that the vehicle (driver) was trying to avoid driving in front of me.
I pulled out and the vehicle turned SB [southbound] on Market. I caught up to the vehicle and activated my lights north of Central.
Clerk's Papers (CP) at 11. The vehicle did not immediately stop, but instead drove slowly another couple of blocks and then turned left onto Joseph and pulled into a car wash parking lot.[1] As Deputy Hause followed the vehicle, he saw a large "For Sale" sign in the back window that blocked his view of the driver. CP at 11. While the vehicle was slowly traveling southbound, the driver started *1124 waving his hand in the rear window. Hause said it appeared the driver was delaying the stop.
¶ 3 Once the vehicle stopped, Deputy Hause approached the driver's side and asked for the driver's license and paperwork for the vehicle. The driver, who was identified as Jacob Potter, told Hause that he did not have a license and was "`Driving on a suspended license.'" CP at 12. Hause confirmed with dispatch that Potter's license was suspended and also learned that Potter was "on active DOC [Department of Corrections] status" as a result of a felony conviction for a violent offense. Id. Hause had Potter leave the vehicle, handcuffed him near its left rear tire, and searched him. Hause called for backup, in part because of Potter's violent offense history.
¶ 4 In the meantime, Hause had identified the passenger in the vehicle as Nichols. Nichols was not wearing a seat belt. After Deputies Brett Hubbell and Daniel Dutton arrived as backup, Hause had Nichols step out of the car. Dutton then took Nichols to the backup patrol car while Hause searched the vehicle incident to Potter's arrest. The search of Potter and that of the vehicle did not yield any drugs, weapons, or contraband. Hubbell conducted a pat down search of Nichols for weapons.
¶ 5 Hause reported that Nichols appeared intoxicated or under the influence but did not smell of intoxicants. Hause asked Nichols if he had been using drugs and Nichols responded, "No." CP at 12. After searching the vehicle, Hause walked around the rear of it and noticed a plastic bindle that looked like part of a baggie on the ground near where he had handcuffed Potter. The bindle contained a substance that subsequently field-tested positive for methamphetamine. Hause asked Nichols if the bindle was his, and Nichols said, "No way." CP at 13. Dutton said that he had been watching Nichols and Nichols had not thrown or tossed anything. Hause believed that the baggie had come from Potter.
¶ 6 Hause again asked Nichols if he had been using drugs and Nichols said, "No." CP at 13. Hause asked Nichols if he minded if Hause searched him for drugs. Nichols replied that he had already been searched. Hause explained that search had been a pat down for weapons only. Hause asked Nichols again if he could search him. Nichol said, "SureI don't mind." CP at 13. Hause searched Nichols and found a baggie in his sock that contained material that also field tested positive for methamphetamine. Nichols said, "That's not mine," and explained that about the time Hause activated his lights Potter had given it to him and told him to get rid of it. CP at 14. Hause read both Potter and Nichols their Miranda[2] rights and arrested them for possession of a controlled substance.
¶ 7 Nichols moved to suppress the evidence of the drugs, arguing that he was merely a passenger who was not suspected of any criminal activity and that he should have been detained only so long as it took to cite him for the seat belt violation. Because he was unlawfully detained, he contended, his consent to search was invalid. The parties agreed to the facts as stated in the police reports for purposes of the suppression motion. The court denied the motion, finding, among other things, that the stop was valid because the vehicle improperly crossed a double yellow line and made an improper lane change. The court also concluded that an infraction resulted because the vehicle failed to drive as nearly as practicable within a single lane.[3]
*1125 ¶ 8 A bench trial followed on stipulated factsthose in the police and lab reports and Nichols was convicted of possession of a controlled substance. He appealed, arguing that his counsel was ineffective because she conceded the legality of the traffic stop.[4] He maintained the stop was invalid because no traffic infractions were committed, and alternatively, if infractions did occur, the stop was nevertheless a pretextual stop predicated on Deputy Hause's belief that the driver was trying to avoid driving in front of him.
¶ 9 The Court of Appeals determined that the infractions found by the trial court are prohibited under RCW 46.61.130(2), RCW 46.61.140(1) and RCW 46.61.305(2) and that Nichols presented plausible arguments that either these statutes were not violated or they did not apply. However, the court concluded that Nichols failed to show that counsel's performance fell below an objective standard of reasonableness. The Court of Appeals did not address Nichols' claim that the stop was a pretext. State v. Nichols, noted at 131 Wash.App. 1047, 2006 WL 417329, at *3, 2006 Wash.App. LEXIS 244, at *7 (Wash.Ct.App. Feb. 23, 2006).

ANALYSIS
¶ 10 Nichols maintains that counsel was ineffective in failing to move to suppress the evidence of the drugs on the ground that the stop was invalid. In order to establish that counsel was ineffective, a defendant must show that counsel's conduct was deficient and that the deficient performance resulted in prejudice. State v. Brockob, 159 Wash.2d 311, 344-45, 150 P.3d 59 (2006); State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004); State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (adopting test in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To show deficient representation, the defendant must show that it fell below an objective standard of reasonableness based on all the circumstances. McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251. The defendant must overcome a strong presumption that counsel's performance was not deficient. Reichenbach, 153 Wash.2d at 130, 101 P.3d 80. In assessing performance, "the court must make every effort to eliminate the distorting effects of hindsight." In re Pers. Restraint of Rice, 118 Wash.2d 876, 888, 828 P.2d 1086 (1992). Prejudice is established if the defendant shows that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Reichenbach, 153 Wash.2d at 130, 101 P.3d 80.
¶ 11 Here, the claimed deficiency is that counsel failed to move to suppress evidence obtained during a pretextual stop. A pretextual stop occurs when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to the driving, and not for the purpose of enforcing the traffic code. State v. Ladson, 138 Wash.2d 343, 349, 351, 979 P.2d 833 (1999). "`Pretext is, by definition, a false reason used to disguise a real motive.'" Id. at 359 n. 11, 979 P.2d 833 (quoting Patricia Leary & Stephanie Rae Williams, Toward a State Constitutional Check on Police Discretion to Patrol the Fourth Amendment's Outer Frontier: A Subjective Test for Pretextual Seizures, 69 TEMP. L.REV. 1007, 1038 (1996)). The reasonable articulable suspicion that a traffic infraction has occurred, which justifies an ordinary warrantless traffic stop, does not justify a stop for criminal investigation. Ladson, 138 Wash.2d at 349, 979 P.2d 833. Thus, a warrantless traffic stop based on mere pretext violates article I, section 7 of the Washington Constitution because it does not fall within any exception to the warrant requirement and therefore lacks the authority of law required for an intrusion into a citizen's privacy interest. Id. at 358, 979 P.2d 833.
¶ 12 To determine whether a stop is pretextual, the totality of the circumstances must be considered, including the subjective intent of the officer and the objective reasonableness of the officer's behavior. Id. at 358-59, 979 P.2d 833. If the court finds the stop is pretextual, all subsequently obtained evidence flowing from the stop must be suppressed *1126 as derivative of the unconstitutional seizure. Id. at 359, 979 P.2d 833 (citing State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986)).
¶ 13 Initially, Nichols' argument that the stop was pretextual is properly before us. A claim of ineffective assistance of counsel may be considered for the first time on appeal as an issue of constitutional magnitude. State v. Greiff, 141 Wash.2d 910, 924, 10 P.3d 390 (2000).
¶ 14 Turning to the first prong of the Strickland test, Nichols must show that counsel's representation was deficient. He says that State v. Meckelson, 133 Wash.App. 431, 135 P.3d 991 (2006), is analogous and compels a determination that the stop here was pretextual. In Meckelson, an officer in his car pulled alongside another car that was traveling between 25 and 30 miles an hour and being driven normally. The officer testified that it was his job to be observant and so he watched other drivers and their reactions. When his car pulled alongside the other car he "thought the driver looked alarmed, with a `deer-in-the-headlight' look" and wondered if the driver was nervous because the car was stolen. Id. at 434, 135 P.3d 991. He dropped back "to check the registration to see if the driver had a suspended license." Id. As he did so, the driver turned onto another road. Id. Because the officer did not see a turn signal, he pulled the car over for failing to properly signal. Id. As he did so, he saw the passenger, Meckelson, reaching toward the floor. Id. As events unfolded, he removed Meckelson from the car, discovered drugs, and arrested Meckelson for possession of methamphetamine. Id.
¶ 15 Although Meckelson's trial counsel did move to suppress on the basis of a pretextual stop, he evidently misunderstood what was required to establish a pretextual stop and failed to challenge the grounds that the officer gave to justify the traffic stop. The Court of Appeals found that counsel was ineffective because he "walked away" from the true inquiry-whether the officer stopped the vehicle for the failure to signal or was the purpose, as the officer candidly suggested, to look for evidence of another crime. Instead, counsel explained that he recognized the officer and because of his knowledge of the officer did not challenge the representations that a traffic infraction occurred justifying the stop. Id. at 437, 135 P.3d 991. Counsel said he was not asking the court to enter a finding that the officer lied. Id. The Court of Appeals said that counsel's job was to challenge the officer's subjective reason for the stop. Id. at 438, 135 P.3d 991.
¶ 16 Nichols contends that nothing distinguishes Meckelson from this case. He says that just as in Meckelson, the pretextual nature of the stop is plain from the record. He says the officer included the real reason in his narrative, i.e., "[i]t appeared to me that the vehicle (driver) was trying to avoid driving in front of me." CP at 11. He argues that the officer here was alerted because the occupants appeared to be avoiding him, just as the officer in Meckelson was alerted because the driver there looked alarmed to see him.
¶ 17 It is true that the officers in both cases noted that the drivers appeared to respond to them in a negative way, suggesting they wanted to avoid the officers. But this case is not like Meckelson. In Meckelson, the officer admitted that he was dropping back to start investigating the driver of the vehicle in that case because his suspicions were aroused. Here, Deputy Hause never said he began investigating the vehicle or its driver, or even that he thought of doing so, prior to seeing what he believed were several traffic infractions. There is no evidence in the record that Hause followed the vehicle because he suspected the driver was trying to avoid him. Although he noted his observation that it "appeared to [him] that the vehicle (driver) was trying to avoid driving in front of [him]," CP at 11, he did not say that this is why he pursued the vehicle. Rather, he reported that nearly concurrently with this observation the vehicle crossed the double yellow line and right away moved into the far right lane. Hause immediately pursued the vehicle and activated his lights as soon as he caught up with it. Id. Even though, as Hause reported, it appeared that the driver tried to delay the stop, it still occurred just a few blocks from when Hause first noticed the vehicle.
*1127 ¶ 18 "Under Ladson, even patrol officers whose suspicions have been aroused may still enforce the traffic code, so long as enforcement of the traffic code is the actual reason for the stop." State v. Hoang, 101 Wash. App. 732, 742, 6 P.3d 602 (2000).
¶ 19 This case is also unlike other cases where pretext has been found. For example, in Ladson officers on gang patrol admitted they followed a vehicle for several blocks looking for a legal justification to stop it so they could investigate suspicions that the occupants were involved in narcotics trafficking. They eventually pulled the vehicle over because it had expired license tabs. Ladson, 138 Wash.2d at 346, 979 P.2d 833.
¶ 20 In State v. DeSantiago, 97 Wash.App. 446, 452, 983 P.2d 1173 (1999), the Court of Appeals held that the stop was invalid as a pretextual stop under Ladson. The trial court's findings show why DeSantiago is distinguishable. The officer saw the defendant exit an apartment complex that was a narcotics hot spot and followed the defendant as he left in his automobile because the officer wanted to identify the license plate and because he was looking for a reason to stop the vehicle. Id. at 452, 983 P.2d 1173. After following for several blocks, the officer saw the defendant make an improper left hand turn and stopped him. The Court of Appeals held the stop was a pretextual stop.
¶ 21 In State v. Myers, 117 Wash.App. 93, 69 P.3d 367 (2003), the defendant drove past the officer, who was in the area on business other than routine patrol and who recognized the defendant as having had a suspended license about one year earlier. The officer began following the car because he suspected that the defendant was driving with a suspended license; he ran a license check as he followed, and waited for the results, but stopped the defendant's vehicle for a traffic infraction before the results were back. Id. at 95, 97, 69 P.3d 367. The court concluded the stop was pretextual because the officer's real purpose was to investigate the defendant for driving with a suspended license. Id. at 97, 69 P.3d 367.
¶ 22 In each of these cases officers suspected criminal activity and followed vehicles waiting for commission of a traffic infraction so the vehicle could be stopped. Here Deputy Hause immediately pursued the vehicle after he saw what he believed to be several infractions and activated his lights as soon as he caught up with it. Also, there is no evidence that Hause was engaged in gang, drug, or another specific kind of investigation rather than on routine patrol.
¶ 23 Nichols argues, however, that other evidence supports pretext. First, he relies on a "Summary of Facts" prepared several months after the stop by a detective not involved in the stop, who said that "DEPUTY HAUSE will testify that on 11/17/03 at approximately 0026 hours he made a traffic stop at Market and Joseph, Spokane County WA after observing this vehicle avoid his marked patrol car in a suspicious manner and also for crossing a double yellow line and not turning into the immediate travel lane while making a turn." CP at 61. The record does not show that Hause himself phrased his observations in this way nor does it show how this summary was used or whether Hause himself ever saw it.
¶ 24 Second, as noted, Ladson instructs that the objective reasonableness of the officer's conduct is relevant to the question whether a stop was pretextual. Ladson, 138 Wash.2d at 358-59, 979 P.2d 833. Nichols contends that there was no objective basis for the stop, i.e., no actual traffic infraction, thus buttressing his claim that the stop was pretextual. But, the question whether a traffic stop is legitimate does not turn on whether a violation in fact occurred, as Nichols seems to believe. Rather, an officer must have probable cause that an infraction occurred, and this standard was clearly met here. See RCW 46.64.015; RCW 10.31.100; RCW 46.64.030; State v. Mendez, 137 Wash.2d 208, 211-12, 220, 970 P.2d 722 (1999). RCW 46.61.140(1) requires that a driver drive "as nearly as practicable entirely within a single lane" and not change lanes without first determining that it is safe to do so. A driver is required to signal at least 100 feet of travel before turning. RCW 46.61.305(2). Because the vehicle immediately crossed over the double yellow center lines and moved to the far right lane of eastbound *1128 traffic, Hause had probable cause to believe these statutes were violated.
¶ 25 With regard to the vehicle crossing double yellow lines, Nichols cites RCW 46.61.130, which relates to no passing zones. He relies on an exception in this statute that applies when a vehicle is turning left from an alley, private road, or driveway. RCW 46.61.130(3). He maintains that leaving a parking lot is equivalent to these actions.
¶ 26 The State, however, says that RCW 46.61.130 is the wrong statute. Instead, the State relies on RCW 46.61.150, which prohibits, among other things, driving across solid double yellow lines that contain cross-hatching where a highway (defined as public ways maintained for vehicular traffic, RCW 46.04.197) has been divided into two or more roadways by such lines. Nichols counters that the record does not show whether the double yellow lines contained such cross-hatching and that, regardless, a vehicle may cross at a crossover or intersection established by public authority. RCW 46.61.150. He says it is likely there was such a crossover or intersection because he was leaving a commercial establishment on a public road. He says that without additional facts, the State cannot establish a violation of this statute.
¶ 27 But when arguing ineffective assistance of counsel, the burden is on the defendant to show deficient performance. Because the purpose of Nichols' contentions that the statutes were not violated is to show that objectively reasonable conduct by counsel would have been to move to suppress on this basis, it is his burden to show the stop was not justified by the commission of traffic infractions. He is simply unable to do so on this record.
¶ 28 Nichols also complains that the only infraction that Hause directly stated occurred is in the "Statement of Arresting Officer and Preliminary Finding of Probable Cause," where Hause stated that he observed the vehicle make an improper turn. CP at 17. The other infractions must all be inferred from the facts stated in the police reports. But Nichols cites no authority for the proposition that an officer must affirmatively state in a report any or all infractions he or she observed or note the particular statutes or ordinances violated. And while the issuance of a citation would specify at least one of the infractions for which the officer believed he had probable cause to stop the vehicle, the issuance of citations is not required. Here, no citations were issued; instead the driver and Nichols were arrested for drug offenses.
¶ 29 Not every possible motion to suppress has to be made. In McFarland, we rejected the premise that failing to move to suppress any time there is a question as to the validity of a search or seizure is per se deficient performance. McFarland, 127 Wash.2d at 336-37, 899 P.2d 1251. Such a rule turns the presumption of effectiveness "on its head," and instead "the burden is on the defendant to show from the record a sufficient basis to rebut the `strong presumption' counsel's representation was effective." Id. at 337, 899 P.2d 1251. Counsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded. Thus, although the presumption of effectiveness can fail if there is no legitimate tactical explanation for counsel's actions, State v. Aho, 137 Wash.2d 736, 745-46, 975 P.2d 512 (1999), there is no ineffectiveness if a challenge to admissibility of evidence would have failed, State v. G.M.V., 135 Wash.App. 366, 372, 144 P.3d 358 (2006).
¶ 30 Moreover, a claim of ineffectiveness due to failure to move to suppress on a particular basis can be undermined to some degree if counsel moved to suppress on another ground. In McFarland, neither defendant had shown deficient representation for failing to move to suppress evidence seized following warrantless arrests, and, as to McFarland, we noted that "[t]o the contrary, McFarland's trial counsel unsuccessfully moved to suppress the physical evidence on the ground that there was not probable cause to suspect McFarland committed the crime, as well as on other grounds." McFarland, 127 Wash.2d at 337 n. 3, 899 P.2d 1251. We concluded that this "undermin[ed the] claim of deficient representation" because it "suggest[ed that] counsel made a reasoned decision not to move for suppression based on the warrantless arrest." Id.
*1129 ¶ 31 Similarly, here Nichols' trial counsel moved for suppression on the ground that as a passenger Nichols could be detained only so long as it took to cite him for a seat belt infraction and his continued detention was unconstitutional and tainted his consent. In addition, Nichols' trial brief in support of the motion cited Ladson for the proposition that the state constitution provides greater protection to the state's citizens than the fourth amendment to the United States Constitution, suggesting familiarity with the case. Like in McFarland, counsel's motion to suppress on other grounds suggests that counsel made a reasoned decision not to move to suppress on the basis of pretext, particularly in light of the paucity of evidence supporting any subjective intent to stop the vehicle for speculative investigative purposes.
¶ 32 We conclude that on this record Nichols has failed to show that counsel should have moved for suppression on the basis of pretext and is unable to overcome the strong presumption that counsel's performance was not deficient. See McFarland, 127 Wash.2d at 337, 899 P.2d 1251; see also State v. Turner, 143 Wash.2d 715, 730, 23 P.3d 499 (2001) (defendant failed to show that counsel's performance was deficient for failing to present expert testimony on a diminished capacity defense where it could not be determined from the record that any expert would have testified the defendant lacked the specific intent to commit the crime with which he was charged).

CONCLUSION
¶ 33 Mr. Nichols has failed to establish on this record that counsel's representation was deficient for failing to move to suppress evidence on the ground of a pretextual traffic stop. The record shows nothing suggesting pretext other than the officer's observation that it looked like the driver of the vehicle was trying to avoid driving in front of him. Counsel in fact moved to suppress on other, more likely grounds. Accordingly, we uphold the Court of Appeals' affirmance of Nichols' conviction.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON and BOBBE J. BRIDGE, Justices.
NOTES
[1] Street maps of the city of Spokane show that Deputy Hause caught up to the vehicle and activated his lights after traveling about four blocks. (Courts routinely take judicial notice of maps. E.g., United States v. Bello, 194 F.3d 18, 24 (1st Cir.1999); United States v. Coutchavlis, 260 F.3d 1149, 1153 (9th Cir.2001); Cartnail v. State, 359 Md. 272, 278, 753 A.2d 519 (2000) (taking judicial notice of a scaled map of the city of Frederick).)
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The court also determined that the search of Nichols was a valid, "free and voluntary consensual search," CP at 24, 26 (Findings of Fact 14-15, Conclusions of Law 9-11); that the pat down search for weapons was objectively reasonable because of articulated safety concerns, i.e., Potter was a convicted felon-violent offender, he was driving with a suspended license, and it was late at night, CP at 23, 25 (Findings of Fact 1, 6, Conclusions of Law 6-7); and that the seizure of Nichols was reasonable because a suspected controlled substance had been found near where the driver had been and Nichols was exhibiting indications of intoxication yet did not smell of alcohol, providing "a valid basis for exceeding the scope of the initial routine traffic stop," CP at 23, 25-26 (Findings of Fact 12-13, Conclusion of Law 8).
[4] Counsel on appeal and this discretionary review was not trial counsel.