# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71927-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KYRON D. BRISBON, | ) | |
| Appellant. | ) | FILED: June 1, 2015 |

TRICKEY, J. — A jury convicted Kyron Brisbon of one count of theft in the first degree. His conviction was based on a series of checks he wrote from one overdrawn bank account and deposited into a second account.

Brisbon contends that the trial court deprived him of a fair trial by admitting as a demonstrative exhibit a chart that described five listed deposits as "Check Fraud." However, Brisbon waived the claim of error by failing to object to the language in the exhibit. In addition, the trial court directed the parties to redact the document and expressly instructed the jury to disregard the "Check Fraud" entry. Brisbon's counsel also lessened the prejudicial impact through her cross-examination of the bank employee who prepared the exhibit. Brisbon fails to establish that his counsel's representation was constitutionally inadequate. We affirm.

## FACTS

The State charged Kyron Brisbon with theft in the first degree. The charge was based on the allegation that during a one-month period in 2010, Brisbon caused a loss to the Bank of America by depositing five checks drawn from one Bank of America account into another Bank of America account. Brisbon owned both accounts. After

each deposit, although each check was later returned for insufficient funds, Brisbon was able to access and use funds credited to his account.

At trial, the State presented the testimony of two witnesses: Bank of America Fraud Investigator Dana Parks, and Detective Stacy Litsjo, who later investigated the case on behalf of the Seattle Police Department's Fraud Unit.

Parks initially investigated the 2010 activity on Brisbon's accounts. She compiled documents, including Brisbon's customer profile, bank statements for both accounts, copies of the five checks returned for insufficient funds, and surveillance photographs taken from the Automated Teller Machines (ATMs) where the deposits occurred. Parks also created a spreadsheet listing the details of each deposit.[1] The spreadsheet lists the check number, dollar amount of each check, time and date of deposit, and deposit location. Under the column heading "Type of Loss," the document includes a single entry, stating "Check Fraud."[2]

Parks testified about the bank's policies and procedures and the specific transactions that occurred within the charging period. She explained that one type of check fraud she frequently investigates occurs when a person deposits a "worthless" check—meaning a check that is not backed by sufficient funds or is later returned for some other reason—and then uses funds credited to the account based on the deposit, causing overdraft. Parks testified when a check is deposited into a Bank of America account, if the originating account is also a Bank of America account, it takes between two to four days for the bank to discover that the deposited check is not backed by

---

[1] Before trial, Brisbon objected to admission of the spreadsheet on the basis that it was not a business record. After the State clarified that it was seeking to admit the document for illustrative purposes only, the court overruled the objection, but directed the State to change the phrase "date and time of crime" to "date and time." 1 Report of Proceedings (RP) at 54-55.
[2] Exhibit (Ex.) 13.

2

sufficient funds. Parks also described the fees associated with returned checks and overdraft as well as the automatic notices that are generated each time a check is returned for insufficient funds, when an account is overdrawn, and when, after an account is overdrawn for 90 days, the bank intends to close an account.

According to Parks's testimony and the bank records, the following five checks payable to Brisbon were deposited into Brisbon's account between May 29 and June 28, 2010 at the same Seattle location: (1) a check for $950 on May 29, (2) a check for $950 on June 1, (3) a check for $6,000 on June 20, (4) a check for $950 also on June 20, and (5) a check for $8,000 on June 28. The total amount of the checks was $16,850. The five checks were drawn from an account that had a negative balance at the time of the deposits. Parks testified that the loss to the bank, excluding overdraft fees and fees imposed for the returned checks, was approximately $5,400.

During Parks's testimony, the State introduced Exhibit 5, the spreadsheet summarizing the five deposits. After the State published the exhibit and Parks began to testify about the details of the first deposit, the court interrupted the testimony and, sua sponte, instructed the jury "not to consider the type of loss as check fraud."[3] The Court further stated:

> It will be the jurors' not anybody else's opinion as to whether any crime occurred. And I'm sorry that I hadn't noticed that. But the jury absolutely is not to consider that. It will be your decision after hearing all the evidence whether . . . any crime occurred[.]"[4]

The prosecutor deleted the phrase "Check Fraud" from the document.[5]

---

[3] 2 RP at 200.
[4] 2 RP at 200.
[5] RP at 200. For purposes of making a record, the court admitted an unredacted version of the spreadsheet as a separate exhibit.

Following Parks's investigation, the bank reported the suspicious transactions to the Seattle Police Department's Fraud Unit. Detective Litsjo testified that in November 2012, more than two years after the transactions at issue, she called the telephone number listed for Brisbon on the bank records. The male who answered identified himself as Brisbon. The detective told Brisbon she was investigating a report from the Bank of America that several "bad checks" had been deposited into his account.[6] At first, Brisbon said the detective "had the wrong person."[7] Then, after the detective explained that she had surveillance video from the ATMs, Brisbon said it was a "misunderstanding," that he had written checks from the wrong checkbook, and that he was working with the bank to resolve the issue.[8] He said the bank was supposed to send him some forms, but before the forms arrived he left the country. When asked for details about this, Brisbon explained that he was in Canada and Houston, Texas between September 2011 and February 2012. Brisbon told the detective that he planned to stop by the bank to repay the money that day, but declined the detective's request to speak to her in person because he had a job interview.

Based on the testimony and documentary evidence, the jury convicted Brisbon as charged. The court imposed a 23-day term of confinement and converted the confinement to community service hours. Brisbon appeals.

---

[6] 2 RP at 122.
[7] 2 RP at 122.
[8] 2 RP at 123.

ANALYSIS

Improper Opinion Testimony

For the first time on appeal, Brisbon contends that the court's admission of the spreadsheet exhibit which described the bank's losses as "Check Fraud" compromised his right to a fair trial.

Although it is improper for a witness to offer an opinion on the defendant's guilt or veracity, an appellate court nevertheless will generally decline to review a claim of error raised for the first time on appeal. RAP 2.5(a). A limited exception exists if the defendant can show that the error was a manifest constitutional error affecting his or her constitutional rights. RAP 2.5(a)(3); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

"Manifest error" in this context requires an "explicit or almost explicit" witness statement on the "ultimate issue of fact." Kirkman, 159 Wn.2d at 936. And the admission of impermissible opinion testimony does not cause actual prejudice and is not manifest within the meaning of RAP 2.5(a)(3) if the trial court properly instructs the jury. For instance, in Kirkman and in State v. Montgomery, the defendants were not prejudiced by allegedly improper opinion testimony because "the jury was properly instructed that jurors 'are the sole judges of the credibility of witnesses' and that jurors 'are not bound' by expert witness opinions." Montgomery, 163 Wn.2d 577, 595-96, 183 P.3d 267 (2008) (quoting Kirkman, 159 Wn.2d at 937).

Parks's description of the type of loss as "Check Fraud" is not an opinion regarding veracity. Arguably, it is not an opinion that Brisbon was guilty of the charged crime. Parks's description of the type of loss did not encompass an opinion as to

whether Brisbon wrote the checks, made the deposits, or knew the funds in the originating account were insufficient to cover the checks. In using the phrase "Check Fraud," Parks expressed no opinion as to whether Brisbon was the person who withdrew funds or made debit purchases. Parks's statement was not an explicit or almost explicit opinion that Brisbon intended to deprive the bank of property and was guilty of theft.

But even if we assume that the spreadsheet entry amounted to an impermissible opinion on Brisbon's guilt, there was no actual prejudice in light of the instructions. As in Kirkman and Montgomery, the jurors were instructed that they are the "sole judges of the credibility" of the witnesses and the "sole judges of the value or weight" of the evidence.[9] The jury was also instructed that it is not "required to accept" the opinion of any expert.[10] In addition to these instructions, the trial court specifically and emphatically instructed the jury to disregard Parks's assertion that "Check Fraud" occurred in making its decision as to whether Brisbon committed the charged theft. Given the explicit instructions, there was no actual or practical and identifiable consequences to Brisbon's trial justifying an exception to RAP 2.5(a)'s preservation requirement. Brisbon fails to show that the court's admission of the unredacted spreadsheet for demonstrative purposes was a manifest constitutional error that may be raised for the first time on appeal.

---

[9] Clerk's Papers (CP) at 32.
[10] CP at 46.

6

Ineffective Assistance of Counsel

In the alternative, Brisbon claims that his counsel rendered ineffective assistance because counsel (1) did not object or move to redact the illustrative exhibit and (2) did not move for a mistrial after the unredacted exhibit was published to the jury.

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). Deficient performance is that which falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). To establish prejudice, a defendant must show by "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." Nichols, 161 Wn.2d at 8. If a party fails to satisfy either the deficiency or the prejudice prong, a reviewing court need not consider the other. State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Brisbon cannot establish a reasonable likelihood that the outcome would have been different had counsel objected or moved to redact the exhibit. First, the admissible testimony already established that the bank investigated Brisbon's banking activity and, based on its investigation, referred the matter to the police. So, even if the jurors had not briefly viewed the unredacted exhibit, it was obvious that the bank believed that unlawful activity had occurred. Second, as explained, when Parks began to testify about the exhibit, before counsel or Parks mentioned the "Check Fraud" entry, the court itself directed the parties to redact the spreadsheet. The trial court then

7

promptly instructed the jury to ignore the language. We presume the jury follows the instructions of the court. Kirkman, 159 Wn.2d at 928.

Brisbon also fails to demonstrate any likelihood that the trial court would have granted a motion for a mistrial or that making such a motion was the only objectively reasonable strategic response. Defense counsel explored Parks's conclusion of fraud on cross-examination. This testimony made it clear that Parks employed a broad definition of fraud and identified the loss as fraud merely because the deposited checks were returned for insufficient funds and led to overdraft after the bank deducted the previously credited funds. Counsel's approach to minimize the impact of the spreadsheet entry was a reasonable trial strategy that will not support a claim of ineffective assistance. See State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (legitimate trial strategy cannot form the basis for a claim of ineffective assistance of counsel), cert. denied, ___ U.S. ___, 135 S. Ct. 153, 190 L. Ed. 112 (2014).

Brisbon was not prejudiced by counsel's failure to object or move to redact the exhibit. The failure to move for a mistrial in these circumstances was not deficient. Brisbon's claim of ineffective assistance of counsel fails.

Affirmed.

Trickey, J

WE CONCUR:

Becker, J

8