
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 75255-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| JEAN PAUL KIRKPATRICK, | UNPUBLISHED OPINION |
| Appellant. | FILED: September 18, 2017 |

LEACH, J. — Jean Paul Kirkpatrick appeals his conviction for first degree theft. He challenges the admission of evidence seized after a Terry[1] stop and a trial court decision about the admissibility of his statements made after this stop. Because the police had a reasonable suspicion, grounded in specific and articulable facts, that Kirkpatrick had been involved in criminal activity, the initial stop was reasonable and the subsequent actions of the police were within the proper scope of a Terry stop. Kirkpatrick's spontaneous and voluntary statements did not require Miranda[2] warnings. We affirm.

## BACKGROUND

On January 8, 2016, in a downtown Seattle coffee shop located in a building lobby, Jean Paul Kirkpatrick asked Avdikadir Ali for the time. When Ali took out his cell phone to look at the time, Kirkpatrick grabbed it and ran away. Ali ran after him, shouting that Kirkpatrick stole his phone. Cole, the security guard in the lobby, took up the chase. Kirkpatrick ran into a cordoned off construction site. There, off duty police officers first

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

detained him. They later arrested him after Ali identified his phone and Kirkpatrick as the one who took it.

The State charged Kirkpatrick with first degree theft. A jury convicted Kirkpatrick as charged. He timely appealed.

## ANALYSIS

Kirkpatrick challenges his initial detention and the police actions taken afterward. He claims that the police lacked authority to detain him because they did not have a reasonable suspicion that he was involved in criminal activity at the time. He also contends that the officers had no basis to search him and exceeded the permissible scope of a Terry stop. Kirkpatrick further contends that the court erred in concluding that his statements made to police were admissible.

### Terry Stop

Kirkpatrick challenges the sufficiency of the evidence to support two of the trial court's findings of fact made after a CrR 3.6 suppression hearing. We review these findings of fact for substantial evidence.[3] "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'"[4] We do not review the trial court's credibility determinations.[5] We review conclusions of law from a suppression hearing de novo.[6]

Kirkpatrick assigns error to these two findings:

---

[3] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).
[4] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).
[5] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).
[6] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

b. Smith was facing southbound away from the zone, when he heard people yelling behind him. Upon turning, he observed a retired officer who was also working the traffic assignment waiving his hands at him a block up. He then heard construction horns honk, and at least one person yelling "hey, hey, hey." Almost simultaneously, the defendant ran around the construction vehicles, in what Smith described as a "dead sprint" directly towards Smith. There were traffic cones and tape around Smith. Moments later, Smith heard someone yell "stop him, he stole a phone." At the same time the defendant was running at Smith, Smith said "Seattle Police, stop."

c. The defendant slowed, and Smith grabbed his arm. Almost immediately thereafter, an individual, who was chasing the defendant, came upon the scene. Referring to that individual, (who was later identified as Jamaal Cole) the Defendant said "that guy is chasing me, he has a gun." Based upon the individual's dress and the pin on his lapel, the officer thought Cole to be a security officer from the nearby old Federal Building. Cole then identified himself as a security guard. Smith ordered the defendant to sit down in an attempt to sort out what was going on. Because the defendant had been running, Smith felt that by having Kirkpatrick sit down, he would not immediately run away. Cole informed Smith that he was working the front desk of a building with a Starbucks [in the] lobby, that the defendant came sprinting out of the Starbucks, with someone chasing him, yelling "he stole my phone," that Cole chased Kirkpatrick, telling him to put the phone down, but that he continued to run away.

Kirkpatrick argues that he stopped on his own and that Officer Smith first saw Cole, the security guard, after Kirkpatrick was seated. Kirkpatrick claims that Officer Smith first learned a phone was stolen from Cole. Thus, he argues that Officer Smith forced Kirkpatrick to sit down before he could have suspected that Kirkpatrick had taken a phone, making the stop illegal.

Kirkpatrick has cherry-picked the facts, ignoring those that support the trial court's findings. At the suppression hearing, Officer Smith testified that he heard people yelling behind him and when he turned he saw a retired officer waving his hands trying to get his

-3-

attention. Officer Smith heard multiple horns start honking in the construction area. Officer Smith testified he was in the middle of the road, when he heard someone yell, "Hey stop him. He stole a phone." Smith did not know who yelled it out, a construction worker, the retired officer, or the security guard. Moments later, Kirkpatrick ran right at him. Smith said, "Seattle Police stop." Smith testified that Kirkpatrick slowed down, coming to a stop, and that he grabbed Kirkpatrick's arm.

Simultaneously, Officer Grayson, about a block away from Smith, heard the retired officer shouting, "hey, hey." Grayson turned and saw the retired officer running toward Smith. Grayson then also ran toward Smith. Seconds before he arrived, Grayson saw Smith holding Kirkpatrick by his left arm. Gary, the retired officer, arrived and took control of Kirkpatrick's right hand. At this point, Kirkpatrick complied with Smith's request to sit down. Grayson testified that Smith told him there was a robbery. Grayson then placed Kirkpatrick in handcuffs. Grayson told Kirkpatrick that he was not under arrest; but, in accordance with Seattle police policy, he read Kirkpatrick his <u>Miranda</u> rights in case a court later considered the detention a de facto arrest.

Grayson testified that while he was detaining Kirkpatrick, he heard Officer Smith ask Kirkpatrick where the phone was and heard Kirkpatrick respond that it was in his pocket. Grayson further testified that Kirkpatrick then told him that "he regretted taking the phone—that he shouldn't have done so."

Cole, the security guard who chased Kirkpatrick, testified that he remembered Kirkpatrick running out of the coffee shop, "fleeing the scene," and being chased by a man saying that Kirkpatrick had taken his phone. When Cole caught up with Kirkpatrick,

he asked him to stop, telling him that he just wanted the phone back. Kirkpatrick ran again. At the next corner, Cole saw Kirkpatrick run into the construction site. Cole testified that when the police saw him chasing Kirkpatrick, they stopped Kirkpatrick. Cole was about 30 feet behind Kirkpatrick. Cole testified that everything was happening so fast. He estimated that he yelled "stop" at least 10 times.

This testimony provides substantial evidence supporting the trial court's findings.

Kirkpatrick next challenges the trial court's conclusion that the police had justification for stopping Kirkpatrick. We review de novo the court's conclusions of law following a motion to suppress.[7]

As a general rule, warrantless searches and seizures are per se unreasonable under the Fourth Amendment of the United Sates Constitutional and article 2, section 7 of the Washington Constitution.[8] Courts recognize a few narrow exceptions to this general rule. Unless a seizure falls within one of these exceptions, evidence found during a search after a warrantless seizure must be suppressed as fruit of the poisonous tree.[9]

The United States Supreme Court has identified a Terry stop as one of the narrowly drawn exceptions to the warrant requirement.[10] It allows officers to briefly seize a person if specific articulable facts, in light of the officers' training and experience, give rise to reasonable suspicion that the person stopped is involved in criminal activity.[11] A court

---

[7] State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).
[8] State v. Kinzy, 141 Wn.2d 373, 384, 5 P.3d 668 (2000); State v. Ladson, 138 Wn.2d 343, 349, 979 P.2d 833 (1999).
[9] State v. Kennedy, 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).
[10] Terry, 392 U.S. at 21, 30.
[11] State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

may consider factors like the officer's training and experience, the location of the stop, and the conduct of the person detained.[12]  When a suspect's activity is consistent with both criminal and noncriminal activity, officers may still make a brief detention under Terry without first ruling out all possibilities of innocent behavior.[13]

Here, the trial court concluded the following facts justified the Terry stop:  (1) Kirkpatrick was running at a dead sprint through a cordoned off construction zone, (2) chased by what appeared to be a security guard, (3) honking horns and yelling, and (4) someone yelling to stop the runner because he stole a phone.  Under the totality of the circumstances, the officers had a reasonable suspicion that Kirkpatrick had stolen a cell phone.  The investigatory stop was reasonable.

Kirkpatrick's claim that the officers exceeded the scope of the Terry stop by grabbing his arms and making him sit down and then handcuffing him has no merit.  Because Kirkpatrick had been running, Smith thought having him sit down would prevent him from running away before he had a chance to sort things out.  Officer Grayson had observed Kirkpatrick with his hand cocked back as though he were going to strike Officer Smith.  The security guard was there when Officer Smith told Officer Grayson that a robbery had taken place.  The police did not exceed the scope of the Terry stop.

Miranda Warnings

Kirkpatrick also challenges the trial court's decision about the admissibility of the statements he made while detained.  The court made the following two conclusions:

---

[12] State v. Pressley, 64 Wn. App. 591, 596, 825 P.2d 749 (1992).
[13] Kennedy, 107 Wn.2d at 6.

b.   The pre-Miranda statement by the defendant that he was being chased by a man with a gun was spontaneous, resulting without interrogation, thus Miranda requirements were not invoked.

c.   The pre-Miranda question to the defendant by Smith as to whether he stole a phone was made when Kirkpatrick was not yet in custody, thus Miranda requirements were not invoked.

But the State did not offer these statements at trial. Thus, the trial court's decision did not prejudice Kirkpatrick. In addition, neither statement required a <u>Miranda</u> warning. The first statement was spontaneous and voluntarily given. The second statement was made in the context of the <u>Terry</u> stop. A person is not in custody for purposes of <u>Miranda</u> simply because the police have detained and questioned that person. Statements made during a <u>Terry</u> stop are noncustodial even though the suspect may not be free to leave when the statements are made.[14]

<u>Ineffective Assistance of Counsel</u>

Kirkpatrick claims his attorney provided ineffective assistance of counsel by failing to challenge the scope of the <u>Terry</u> stop. To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and a resulting prejudice.[15] Counsel's performance is deficient if it falls below an objective standard of reasonableness.[16] Failure on either prong of the test defeats a claim of ineffective assistance of counsel.[17] "Counsel may legitimately decline to move for suppression on a

---

[14] <u>State v. Walton</u>, 67 Wn. App. 127, 130, 834 P.2d 624 (1992) (statements were noncustodial even though police officer testified that he would have arrested the defendant if he attempted to leave).

[15] <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[16] <u>State v. McFarland</u>, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995).

[17] <u>Strickland</u>, 466 U.S. at 697.

particular ground if the motion is unfounded."[18] Because the stop did not exceed the scope of a Terry stop, Kirkpatrick's attorney was not ineffective for not moving to suppress on that basis.

### Appellate Costs

Finally, Kirkpatrick asks this court to deny the State appellate costs based on his indigency. We generally award appellate costs to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[19] Here, the trial court found Kirkpatrick indigent. If the State has evidence indicating significant improvement in Kirkpatrick's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

### CONCLUSION

We affirm the judgment and sentence.

_Leach, J._

WE CONCUR:

_Trickey, A.C.J._                    _Becker, J._

---

[18] State v. Nichols, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007).
[19] RAP 14.2.