IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION TWO

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 51460-5-II |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON PHILLIP WHITE, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Jason White challenges his convictions for eluding a police officer

and driving with a license suspended on the theory of ineffective assistance of counsel

resulting from his trial attorney's failure to interview a witness and to summon the

witness to testify. We conclude that White fails to show prejudice by reason of any

deficient performance of his counsel.

FACTS

This opinion gleans its facts from trial testimony. At noon, on March 3, 2016,

Sergeant Todd Brightbill of the Multnomah County Sherriff's Office drove home after

finishing his work shift in Troutdale, Oregon. Sergeant Brightbill wore his police

uniform and drove a marked patrol vehicle equipped with lights and siren. While

heading north on Interstate 205 near the Airport Way exit in Portland, Brightbill noticed a

blue Volkswagen Passat adorned with Oregon license plate YMM224. The driver of the blue Passat executed an abrupt lane change without signaling, which action caught Brightbill's attention. Brightbill wished to return home, so he did not initiate a traffic stop for the unsafe lane change.

Sergeant Todd Brightbill continued north on I-205 and noticed the same blue Volkswagen Passat traveling on I-205 northbound near the Washington State end of the interstate bridge. Sergeant Brightbill's patrol car and the blue Passat traveled near the location where the speed limit increases to sixty miles per hour. While Brightbill's car occupied the left most lane in northbound traffic, the blue Passat passed his patrol vehicle on the right. The blue Passat traveled at 75 to 80 miles per hour as it overtook his vehicle. Brightbill possessed authority to stop vehicles in Clark County, Washington.

Sergeant Todd Brightbill peered into the windows of the Volkswagen Passat, and he viewed the driver's face as the vehicle overtook his patrol car. Sergeant Brightbill typed the Volkswagen's license plate number on the Oregon Department of Motor Vehicle computer site and learned of the suspension of the Oregon driver's license of the registered owner of the car, Jason White. Brightbill, with his patrol car computer, viewed the driver's license photo for Jason White, which photo matched the appearance of the driver of the blue Passat, except that the driver's hair appeared shorter than White's hair in the photograph.

Todd Brightbill approached the blue Passat from the right side to confirm the driver matched the registered owner's picture. The computer still displayed the photo of

2

Jason White as Brightbill approached. Sergeant Brightbill confirmed that the person driving the blue Passat matched the driver's license picture of the registered owner of the vehicle.

Sergeant Todd Brightbill activated the overhead emergency lights on his patrol vehicle in order to stop the Volkswagen Passat. The blue Passat moved from the fast lane to the slow lane but did not pull over. The driver maintained a constant speed. Sergeant Brightbill drove behind the Passat and activated his emergency siren. The blue Passat pulled over to the shoulder of the highway and slowed to about twenty miles per hour. The vehicle did not stop. The Passat then accelerated at a high rate of speed, swerved into traffic lanes, and maneuvered in between other northbound vehicles. The blue Passat accelerated to 100 miles per hour. The Passat nearly collided with other cars due to the difference in speed between the Passat and the other traffic. Sergeant Brightbill turned off his emergency lights and siren and discontinued pursuing the vehicle in compliance with his department's pursuit policies and to reduce the danger to the public. Brightbill thereafter verified that Washington State had also suspended Jason White's driver's license.

The following night, March 4, 2016, Sergeant Todd Brightbill and Multnomah County Sheriff Deputy David Hughes drove to the address, on Southeast 62nd Avenue in Portland, designated for Jason White by the Oregon Department of Motor Vehicles. The deputies stridently knocked on the home's front door, but no one answered. Deputy Hughes and Sergeant Brightbill saw, in the dwelling's driveway, a work truck with the

license plate of a truck registered to White. Brightbill and Hughes also spotted the blue

Volkswagen Passat, driven on March 3, parked fifty yards from White's house on

Southwest Harney Street, which intersects with Southwest 62nd Ave. The blue Passat

had the same license plate that Sergeant Brightbill noted the previous day.

PROCEDURE

The State of Washington charged Jason White with one count of attempting to

elude a pursuing police vehicle and one count of driving while license suspended or

revoked in the third degree.

On September 18, 2017, trial counsel for Jason White filed a motion and affidavit

requesting additional funds for an investigator at public expense. In the affidavit, defense

counsel averred that an investigator had been assigned to the case and had already

contacted possible alibi witnesses. The declaration further noted that the investigator

would locate and interview other witnesses before trial. On September 20, the Clark

County indigent defense coordinator authorized five additional hours of investigator

services.

On September 28, 2017, Jason White's defense counsel filed a motion and

declaration for order of trial continuance. Counsel's declaration stated that White would

raise an alibi defense since White worked in Oregon at the time of the offense. Defense

counsel asked for the continuance so that alibi witnesses could be interviewed and

subpoenaed for trial. The record does not indicate whether the State opposed the motion

or whether the trial court granted the motion.

Trial proceeded on December 18, 2017. Sergeant Todd Brightbill testified for the State. He identified in the presence of the jury Jason White as the March 3, 2016 driver of the blue Passat.

Michael Clark testified for the defense. Clark attested that he lived in Longview, Washington and knew Jason White because Clark's daughter previously dated White. Clark declared that he had not been in contact with White during the past year before trial. Clark added that, sometime in March 2016, White conveyed to him the blue Volkswagen Passat in order to pay a debt owed Clark. Defense counsel then presented Clark with a sworn statement that Clark made to a Cowlitz County Sheriff's Deputy in October 2016. In the sworn statement, Clark claimed that he received the Passat from White in December 2015 or January 2016. After reading the sworn statement, Clark testified:

> I believe that must have been more right than March. I thought it was about March.

Report of Proceedings (RP) at 91.

During further trial testimony, Michael Clark asserted that, when taking possession of the Volkswagen Passat, he retrieved the Passat from Jason White's Portland house and drove it to Clark's residence in Longview. According to Clark, he drove the car one other time after he licensed it on April 15, 2016. On this occasion, the Passat malfunctioned and was towed to Clark's residence. The Passat thereafter sat adjacent to Clark's backdoor to his house under a plastic tarp. Clark also testified that the blue Passat always had tinted windows and the defense moved to admit a photo of the Passat that Clark took.

5

The trial court admitted the photo as an exhibit. Clark explained that, because of a disability, he always remained at home and the Passat never left his property.

On cross-examination, Michael Clark testified that he spoke with Jason White in early April 2016 regarding the missing title to the blue Passat and again before rendering the sworn statement to law enforcement on October 9, 2016. Clark could not understand how the car could have been on the I-205 bridge between Portland and Vancouver, Washington, on March 3, 2016.

Jason White testified at trial. White denied the possibility that he drove the blue Passat on I-205, on March 3, 2016, since he worked at a job site in Beaverton, Oregon that day. White owned his own business and also worked as an employee for Lifetime Remodeling. White asserted that his employer scheduled him to execute work on Cathy Thompson's Beaverton home for one week near March 3, 2016. He testified that he and another employee began work at 8:30 a.m., on March 3, the home owner arrived at the location at 10:00 a.m., and the owner left one hour later. White stated that he and his helper continued to work after the home owner departed. He did not leave the Beaverton job site and drive to Washington State on March 3. White added that he lacked time during a lunch break to travel over the bridge to Washington. The defense admitted photographs that White avowed showed the condition of the Beaverton residence at the beginning and end of the weeklong repair project. On cross-examination, White acknowledged that the pictures were undated and that he did not take some photographs on March 3.

Jason White further testified that, in March 2016, he no longer possessed the blue Passat. He claimed to only then possess a red Ford F-150 pickup. White added that he transferred the blue Passat to Michael Clark in December 2015 or January 2016. He said he spoke with Clark, in April 2016, when he received the summons for this prosecution, about the location of the Passat. Clark replied that the Passat sat at Clark's house and Clark knew nothing about a March 3 trip across the Interstate bridge. The State admitted an exhibit, a copy of the summons issued to White, which pleading did not identify the vehicle allegedly driven by White at the time of the police pursuit.

During the State's rebuttal presentation, Sergeant Todd Brightbill testified that Michael Clark was "[d]efinitely not" the person driving the blue Passat on March 3, as Brightbill saw Clark during the latter's previous day's testimony. RP at 136. The prosecution questioned Sergeant Brightbill about the photograph Clark admitted as an exhibit to show the tint of the Passat's windows. Brightbill answered: "[i]f they [the windows] were tinted, they had to be a fairly light tint." RP at 134. After viewing the photograph, Brightbill commented that he could not gauge the level of tint from the picture because he did not know the lighting at the time of the picture or the nature of the camera used. Brightbill explained that he judges the level of tint in a vehicle by his ability to see an occupant. Brightbill commented that the photo of the Passat failed to show the vehicle's license plate.

Multnomah County Sheriff Deputy David Hughes testified during the State's rebuttal case. Deputy Hughes testified that he went to an address with Sergeant Todd

7

Brightbill in southeast Portland on March 4, 2016. According to Hughes, he remembered seeing that day a red work truck, with ladders and painting supplies, parked in the driveway at the 62nd Avenue residence. He told the jury that the red pickup truck was registered to Jason White. Deputy Hughes testified that he and Brightbill located a blue Passat, registered to White, within two blocks of the 62nd Avenue home.

The jury found Jason White guilty on both count I and II.

Before sentencing, Jason White moved for a new trial under CrR 7.5(a), while citing grounds of accident, mistake, or surprise. Declarations of defense counsel Alyosha McClain and White accompanied the motion. In his declaration, defense counsel revealed that, on the morning trial began, he learned for the first time of a May 1, 2017 letter from White's employer, Gino Streano.

Jason White attached the May 1, 2017 letter to his declaration. The letter on Lifetime Remodeling stationery read:

> Jason White is a sub contractor of Lifetime Remodeling Systems and was scheduled for a full day exterior repair March 3rd 2016 at a residence managed by Cath Thompson. This repair was completed to the satisfaction of our homeowner on March 3rd. I have verified that he [White] was scheduled on our scheduling calendar and I also verified that the work was completed and paid for in full by Cathy Thompson.

Clerk's Papers (CP) at 46 (Two differing spellings for Thompson's first name in original). White also appended to his declaration a May 1, 2017 e-mail message, by which he forwarded the Streano letter to his first attorney and photographs of work performed.

In his declaration in support of the motion for new trial, Alyosha McClain testified that, had he known of the letter from White's employer earlier, he would have

8

subpoenaed Gino Streano. McClain declared that White was not to blame for McClain's

ignorance of the letter, since White reasonably believed that his previous attorney shared

the letter with McClain. McClain characterized White's failure to summon Streano as a

witness at trial as an accident and mistake.

During a hearing on the motion for a new trial, defense counsel Alyosha McClain

remarked:

> When I took over the case, I had not seen said letter until the
> morning of trial and I didn't—perhaps and maybe it was defense counsel's
> fault for not seeking a continuance at that time, but I didn't foresee the
> court granting a continuance the morning of trial based on that letter, and
> further when I couldn't introduce it into evidence without the employer.
> And hence, when Mr. White showed me said letter the day of the trial, I
> was very surprised in that would have in fact changed how I would have
> tried the case and would have subpoenaed his employer to attend the trial to
> bring said letter into evidence.

RP at 215. McClain further asserted a belief that the letter and that Gino Streano's

testimony would have corroborated White's alibi.

The trial court denied Jason White's motion for a new trial. The court agreed that

Gino Streano could have corroborated White's story. Nonetheless, the trial court

reasoned that, even with this potentially verifying testimony, the jury would likely have

convicted White based on Sergeant Todd Brightbill's testimony and Sheriff Deputy

David Hughes' testimony of the Passat's location fifty yards from White's house. The

trial court further observed that a coworker could have been summoned to supply the

same testimony as Streano.

LAW AND ANALYSIS

On appeal, Jason White challenges his conviction based on his second trial attorney's purported ineffective assistance of counsel when failing to contact Gino Streano and failing to summon Streano as a witness at trial in order to corroborate White's alibi. White does not argue that his trial counsel performed deficiently by failing to request a trial continuance on December 18, 2017, when counsel first saw the letter from Streano.

A claim of ineffective assistance of counsel may be raised for the first time on appeal as an issue of constitutional magnitude. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). To demonstrate ineffective assistance of counsel, a defendant must make two showings. First, the defendant must show that defense counsel performed deficiently, i.e., that the performance fell below an objective standard of reasonableness based on consideration of all circumstances. Second, a defendant must show that defense counsel's representation prejudiced the defendant.

This court need not address both prongs of the ineffective assistance test if the defendant fails to establish one prong. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). We rest our decision on Jason White's failure to establish prejudice. Therefore, we do not decide whether second counsel's performance fell below a standard of reasonableness.

10

The Washington Supreme Court, in the same breath, has announced facially inconsistent standards as to prejudice in the context of ineffective assistance of counsel. On the one hand, the accused must show "a probability that the outcome would be different but for the attorney's conduct." *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015); *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). Stated differently, prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). On the other hand, to show prejudice, the accused "need not prove that the outcome would have been different but must show only a 'reasonable probability'—by less than a more likely than not standard—that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *State v. Jones*, 183 Wn.2d at 339; *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Regardless of the test utilized, Jason White does not establish reasonable probability of prejudice.

We hold Jason White fails to show prejudice primarily because Gino Streano's letter does not confirm that White was present at the Beaverton worksite, rather than driving a car on Interstate 205, during the noon hour on March 3, 2016. Streano writes only that he scheduled White to work on March 3 and that White timely performed a job. Although Streano suggests the Beaverton project took only one day, White testified the

11

undertaking lasted a week. Streano does not confirm those hours of the day, on March 3, during which White worked on the site.

Perhaps Streano could provide percipient testimony of Jason White being present in Beaverton during the March 3 noon hour, but we cannot deduce such a conclusion based on the record. White may establish additional facts as to Streano's personal knowledge of White's whereabouts during a personal restraint petition.

CONCLUSION

We affirm Jason White's convictions for felony eluding a police officer and driving while license suspended.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Melnick, J.

_____
Glasgow, J.

12