**FILED**
**MARCH 16, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 38875-1-III |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| MEEGAN M. VANDERBURGH, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — In this timely personal restraint petition, Meegan

Vanderburgh asserts she is under unlawful restraint following her conviction for vehicular

homicide. She asserts she received ineffective assistance of counsel, both at trial and on

appeal. We disagree and deny her petition.

FACTS

Daniel Nesdahl was driving his Chevrolet pickup truck on Sprague Avenue in

Spokane when he approached a green light at the intersection with Farr Road. It was dark

and cold outside. Mr. Nesdahl was not impaired. As he approached the intersection, he

saw two people crossing Sprague Avenue against the light. One of the pedestrians was

Cheryl Camyn, who was wearing dark clothing. He noticed the pedestrians and quickly stopped his truck short of the crosswalk. Ms. Camyn paused in front of the truck.

While Ms. Camyn was in front of the truck, Meegan Vanderburgh's Subaru struck the truck from behind. The impact pushed the truck forward, thereby striking and crushing Ms. Camyn under the truck. She suffered blunt head, chest, abdominal, and pelvic injuries and died within 24 hours. Following her death, a toxicology report showed she had methamphetamine, chlordiazepoxide, and hydrocodone in her system.

*Search warrant application*

Spokane County Sheriff's Deputy Todd Miller responded to the reported injury collision. After he personally spoke with and observed Ms. Vanderburgh, he applied for a search warrant to obtain her blood. He explained his determinations in a declaration in support of his application for the warrant:

> The facts supporting my belief that Meegan Michelle Vanderburgh is under the influence of intoxicants and/or drugs are as follows:
>
> Vehicle in Motion:
>
> On 1-14-16, at about 2006 hours, deputies responded to Sprague and Farr for an injury collision report. When I arrived I saw a blue Subaru station wagon (Washington plate AFF3025) was stopped in the right hand lane of the intersection on Sprague at Farr (facing west). The Subaru had front end damage. I saw a gray Chevy S10 pickup (Washington plate C2578lE) stopped in [ ] front [of] the Subaru with damage to the rear. There had been a pedestrian in front of the Chevy at the time the Subaru ran

2

into the back of the Chevy.  The pedestrian had been trapped under the Chevy and had life threatening injuries (transported to the hospital and last I heard was being taken into surgery).

Personal Contact with Driver:

I contacted the driver of the Subaru, who i [sic] identified as Meegan Vanderburgh by her Washington driver's license.  I asked Vanderburgh for her license, registration and insurance.  Vanderburgh handed me her license and an expired registration.  Vanderburgh told me she could not find her insurance and said she has All Lines insurance.  Vanderburgh had red glassy eyes and slow movements while looking through her wallet for her insurance.
I asked Vanderburgh where she was coming from.  Vanderburgh told me she had been coming from home on Sunderland and was headed to the north side.  Vanderburgh had the odor of an alcoholic beverage coming from her breath when she spoke.  I asked Vanderburgh how much she had to drink.  Vanderburgh told me she had one drink hours ago after she got off work.  I asked where she had been drinking.  She told me she had a shifter at the Monkey Bar.

Personal Restraint Petition (PRP), Ex. A, at 2.

Deputy Miller then described asking and receiving permission to conduct field sobriety tests.  Ms. Vanderburgh failed the field sobriety tests, so Deputy Miller requested that she take a voluntary breath test.  She agreed and blew 0.13.  Ms. Vanderburgh was then placed under arrest and, shortly after, the court authorized the search warrant for her blood.  Ms. Vanderburgh's blood showed a blood alcohol concentration of 0.13 and tetrahydrocannabinol in her system.

*Procedure*

Following Ms. Camyn's death, the State charged Ms. Vanderburgh with vehicular homicide by way of driving under the influence. During pretrial motions, defense counsel requested that the trial court admit Ms. Camyn's toxicology report into evidence, arguing that the jury was entitled to hear about her behavior and then determine whether she was a proximate cause of the collision or an intervening superseding cause. The State countered that the evidence of methamphetamine in the toxicology report was not relevant and would only be used to prejudice the jury. The trial court decided to exclude the report and explained its reasoning:

> Counsel, I am concerned. This evidence, I think, has limited relevance because of the facts that we all have in front of us. . . . I believe that the toxicology report would be unduly prejudicial. . . . I'm going to reserve . . . final decision, and if you wish to ask the toxicologist questions out of the presence of the jury in voir dire, I'll allow that. And if there's some link that can be made, we may get there at that time, but right now, although it is minimally relevant, I find [the toxicology report] to be highly prejudicial and any probative value to be outweighed by that prejudice. So, I'm going to exclude it and ask that you not mention it in opening.

Report of Proceedings (RP) at 156-57.

The State called four expert witnesses to testify at trial: Deputy Miller, a drug recognition expert; Dr. John Howard, MD; Amanda Chandler, a Washington State Patrol

toxicologist; and Detective Jeffrey Welton. As promised, defense counsel was offered the opportunity to voir dire each witness outside the presence of the jury before they testified.

*Voir dire examinations*

During voir dire examination, Deputy Miller testified about his qualification as a drug recognition expert and his experience with individuals on methamphetamine. When questioned about how methamphetamine affects a person, he explained that the effects depend on the individual and their potential tolerance to the substance. He testified that illicit and prescription drugs affect people differently based on how long they had been taking the drug, how often, how recently, and how tolerant they are. He could not say with certainty that Ms. Camyn was impaired based on her toxicology report.

Dr. Howard is the forensic pathologist and medical examiner for Spokane County. He performed the autopsy on Ms. Camyn. During voir dire examination, when asked about the effect the level of methamphetamine in Ms. Camyn's blood may have had on her, he testified "[i]t would be speculation to say what this level meant for any one individual." RP at 607. When asked about the effects of the combination of drugs present in Ms. Camyn's system, he testified that it is "highly variable. Certainly they are all interacting with the nervous system to some degree, but again, I can't say with any certainty what the effect would be of the combination or any individual drug." RP at 608.

Amanda Chandler is a forensic scientist with the Washington State Patrol

Toxicology Laboratory.  During voir dire examination, Ms. Chandler testified about the

general effects of the individual drugs and combination found in Ms. Camyn's system.

She testified that each person reacts to a drug in a unique way and that she could not

speak "to each person's unique expression of that drug in them."  RP at 660.

After voir dire examination of the State's expert witnesses, the trial court reiterated

that it found Ms. Camyn's toxicology report to be prejudicial and of limited relevance.

Following the voir dire examinations, defense counsel renewed its motion to admit Ms.

Camyn's toxicology report into evidence.  The court denied the motion and maintained

that the report's "potential probative value is greatly outweighed by the prejudicial

effect."  RP at 771.  Following trial, the jury found Ms. Vanderburgh guilty of vehicular

homicide.

*Sentencing*

At Ms. Vanderburgh's sentencing hearing, the State sought a mandatory

enhancement based on a prior conviction of negligent driving in the first degree.  The

State offered exhibits to prove the prior conviction, including: (1) a certified copy of the

Spokane County District Court docket showing that Ms. Vanderburgh pleaded guilty to

negligent driving, amended down from driving under the influence (DUI), (2) a certified

6

Department of Licensing (DOL) printout, and (3) a certified copy of the District and

Municipal Court Information System (DISCIS)[1] case history for Ms. Vanderburgh.

Defense counsel challenged the sufficiency of the documents as proof of the prior

conviction, arguing that the offered documents were not the best evidence of the

conviction. Instead, defense counsel argued that the certified judgment and sentence was

the best evidence and that the State had not explained why that document was not

available. The trial court found the State's exhibits were sufficient to prove Ms.

Vanderburgh's prior conviction and continued with sentencing. The court sentenced Ms.

Vanderburgh to 78 months of confinement with an additional 24 months for the

mandatory enhancement. Ms. Vanderburgh appealed.

*Prior appeal*

On appeal, Ms. Vanderburgh argued that the trial court deprived her of the

constitutional right to present a defense and committed instructional error when it limited

---

[1] The DISCIS is a case management system used by courts that draws on the Judicial Information System (JIS) database and can produce a log of any individual's criminal history for any case in which entries were made into the JIS. *State v. Cross*, 156 Wn. App. 568, 588, 234 P.3d 288 (2010). The JIS "is the primary information system for courts in Washington" and "serves as a statewide clearinghouse for criminal history information." JIS, Wash. Cts., http://www.courts.wa. gov/jis (last visited Mar. 13, 2023). Records on the JIS system are added by courts pursuant to rules adopted by the JIS Committee. JIS Committee Rule (JISCR) 18. *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 569-70, 243 P.3d 540 (2010).

her ability to present evidence and instructions pertaining to superseding cause.[2] *State v. Vanderburgh*, 18 Wn. App. 2d 15, 20, 489 P.3d 272, *review denied*, 198 Wn.2d 1022 497 P.3d 384 (2021). We disagreed and held that the trial court did not err in limiting evidence and instructions on superseding cause. *Id*. at 25. We noted that the facts suggesting a superseding cause were weak and that there was low probative value in admitting Ms. Camyn's toxicology report and a risk of prejudice if it was admitted. *Id*. at 22. We affirmed the judgment and sentence and issued our mandate on November 9, 2021. On May 3, 2022, Ms. Vanderburgh filed the instant petition.

## ANALYSIS

### STANDARD OF REVIEW

Collateral relief from a conviction is an extraordinary remedy that seeks to disturb a final judgment; therefore, a personal restraint petition must meet a high standard to obtain relief. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). Typically, this means a petitioner must show either that they were actually and substantially prejudiced by constitutional error or that their trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete

---

[2] Ms. Vanderburgh also alleged error regarding her ability to present a defense at summation and with sentencing. We addressed and analyzed these assignments of error in the unpublished portion of the opinion. They are not relevant to this appeal.

miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d

335 (2007).

Criminal defendants have a constitutionally guaranteed right to effective assistance

of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190

Wn.2d 104, 115, 410 P.3d 1117 (2018). If a personal restraint petitioner makes a

successful ineffective assistance of counsel claim, they have necessarily met their burden

to show actual and substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835,

846-47, 280 P.3d 1102 (2012).

INEFFECTIVE ASSISTANCE OF COUNSEL

Ms. Vanderburgh contends her trial and appellate counsel provided ineffective

assistance. We review a claim of ineffective assistance of counsel de novo. *State v.*

*Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Washington follows the *Strickland*[3] standard for reversal of criminal convictions

based on ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d

1260 (2011). A defendant bears the burden of showing that (1) their counsel's

performance fell below an objective standard of reasonableness based on consideration of

all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

poor performance the outcome of the proceedings would have been different. *See id*. at 32-35. If either prong is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

With regard to the first prong, a defendant must overcome a strong presumption that counsel's performance was reasonable and, when counsel's conduct can be characterized as a legitimate trial strategy, performance will not be deemed deficient. *State v. Breitung*, 173 Wn.2d 393, 398, 267 P.3d 1012 (2011). To rebut this presumption, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). With regard to the second prong, prejudice is established if the defendant shows there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Reichenbach*, 153 Wn.2d at 130.

1.      *First claim: Failing to seek suppression of the search warrant*

Ms. Vanderburgh contends her trial counsel was ineffective for failing to challenge the validity of the search warrant for her blood. We disagree.

A search warrant may issue only on a showing of probable cause. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582

(1999). Probable cause exists if the declaration supporting the warrant describes facts and circumstances sufficient to establish a reasonable inference that a person is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. *Thein*, 138 Wn.2d at 140; *see also State v. Kalakosky*, 121 Wn.2d 525, 536, 852 P.2d 1064 (1993) (noting probable cause is the proper determination for the taking of a suspect's blood). "'The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer.'" *State v. Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (quoting *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)).

An application for a warrant must state the underlying facts and circumstances on which it is based in order to facilitate a detached and independent evaluation of the evidence by the issuing magistrate. *Thein*, 138 Wn.2d at 140. The issuing magistrate's determination of probable cause is given great deference by the reviewing court, with all doubts resolved in favor of the warrant's validity. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). In determining probable cause, the magistrate makes a practical, commonsense decision and takes into account all of the circumstances set forth in the affidavit and drawing commonsense inferences. *Id*. Probable cause requires a probable showing of criminal activity. *Id.* at 510.

Ms. Vanderburgh argues that Deputy Miller's application for the search warrant was based on conclusory statements, personal belief, and suspicion, and therefore did not establish probable cause to draw and search her blood. Specifically, Ms. Vanderburgh points to two portions of Deputy Miller's declaration in support of his application for the search warrant to support her argument.

She argues the following two sentences are conclusory: "There had been a pedestrian in front of the Chevy at the time the Subaru ran into the back of the Chevy. The pedestrian had been trapped under the Chevy . . . ." PRP, Ex. A, at 2. She contends the sentences fail to advise the issuing court how those facts were obtained. She also argues the following sentence is conclusory: "I contacted the driver of the Subaru, who i [sic] identified as Meegan Vanderburgh by her Washington driver's license." PRP, Ex. A, at 2. She contends the sentence fails to show how he knew Ms. Vanderburgh was the driver.

These arguments are unconvincing because they are contrary to how an application for a search warrant is reviewed. A few sentences are not taken in isolation from the rest of the application. Rather, all of the circumstances in the declaration are taken into account and commonsense inferences can be drawn. *Maddox*, 152 Wn.2d at 509. Nor is technical precision required for each statement. Rather, the supporting declaration "must

be viewed in the light of common sense and need not be expressed in formal language, nor meet the procedural and linguistic requirements of judicial pleadings, nor rise to the standards for the admissibility of trial evidence." *State v. Patterson*, 83 Wn.2d 49, 61, 515 P.2d 496 (1973).

Deputy Miller's declaration listed the crimes for which he sought a search warrant to further investigate. Those crimes were vehicular assault and driving under the influence of intoxicants and/or drugs. Although the declaration did not tell the authorizing judge how Deputy Miller knew some facts, it provided sufficient detail so the judge could reasonably infer that probable cause existed that Ms. Vanderburgh had committed those crimes. Specifically, the judge could reasonably infer: (1) Ms. Vanderburgh had been drinking and driving because she admitted both, (2) Ms. Vanderburgh was the driver of the Subaru because with only two vehicles it is not difficult for a trained officer to determine who drove which vehicle, (3) based on the damage to the vehicles, the driver of the Subaru was at fault, (4) Ms. Vanderburgh's driving was impaired by alcohol and/or drugs, and (5) Deputy Miller spoke with someone at the scene, as trained officers commonly do, and confirmed how the pedestrian was injured.

Ms. Vanderburgh suggests that we consider the "*Aguillar/Spinelli*"[4] test, which is used to evaluate warrants and probable cause based on a confidential informant's tip. The test requires a showing that the informant had a basis of knowledge and credibility before finding probable cause. *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984). Washington courts apply the test to warrants and probable cause based on the informant's tips. *State v. Vickers*, 148 Wn.2d 91, 111-13, 59 P.3d 58 (2002).

Ms. Vanderburgh cites to no authority for applying the test to an officer's declaration in support of a search warrant. Without authority to support her position, the court is not required to search out authorities; it may assume that counsel, after a diligent search for supporting authority, found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Having found the search warrant valid, we now turn to Ms. Vanderburgh's claim that trial counsel provided ineffective assistance for failing to move to suppress the warrant.

---

[4] *See Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

Ms. Vanderburgh contends her trial counsel had "nothing to lose" by moving to suppress the blood results because it would have taken away one of two bases the State had to prove she was driving under the influence. We disagree for two reasons. First, as mentioned earlier, the application for the search warrant was sufficient to establish probable cause for vehicular assault and driving under the influence of alcohol and/or drugs. Ms. Vanderburgh was not prejudiced by her attorney's decision not to file a suppression motion. Second, the United States Supreme Court has rejected the "nothing to lose" argument. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) ("This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims.").

Our Supreme Court has also rejected the premise that failing to file a motion to suppress any time there is a question as to the validity of a search is per se deficient performance. *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007) (citing *State v. McFarland*, 127 Wn.2d 322, 336-37, 899 P.2d 1251 (1995)). "Such a rule turns the presumption of effectiveness 'on its head,' [when] instead 'the burden is on the defendant to show from the record a sufficient basis to rebut the "strong presumption" counsel's representation was effective.'" *Nichols*, 161 Wn.2d at 14 (quoting *McFarland*, 127 Wn.2d at 337). Counsel may legitimately decline to move for suppression on a particular

15

ground if the motion is unfounded. *Nichols*, 161 Wn.2d at 14. Thus, although the presumption of effectiveness can fail if there is no legitimate tactical explanation for counsel's action, there is no ineffectiveness if a challenge to admissibility of evidence would have failed. *Id.* at 14-15. Here, there was no issue for trial counsel to spot because the search warrant was valid, as discussed above.

We conclude trial counsel was not ineffective for failing to bring a motion to suppress, which would have failed. Accordingly, we reject this first claim.

2. *Second claim: Failure to call a toxicology expert*

Ms. Vanderburgh also contends trial counsel provided ineffective assistance by failing to call an expert to help educate the court on the admissibility of the toxicology report. We disagree.

In making her argument, Ms. Vanderburgh fails to include a declaration from a qualified expert to show that the level of methamphetamine in Ms. Camyn's system contributed to her death. Without such a declaration, it is pure speculation that an expert witness would have testified differently than the witnesses voir dired outside the presence of the jury. Speculation is insufficient to establish prejudice, which is fatal to Ms. Vanderburgh's ineffective assistance of counsel claim. Accordingly, we reject this second claim.

3.      *Third claim: Failure to appeal finding of the prior conviction*

Ms. Vanderburgh contends her appellate counsel provided ineffective assistance by failing to appeal the finding of her prior conviction at sentencing.  We disagree.

At sentencing, the State sought an enhancement based on a prior conviction of Ms. Vanderburgh for an alcohol related, first degree negligent driving, which was amended down from DUI.  The State offered exhibits to prove the prior conviction including: (1) a certified copy of the Spokane County District Court docket showing that Ms. Vanderburgh pleaded guilty to negligent driving, amended down from DUI, (2) a certified DOL printout, and (3) a certified copy of the DISCIS case history for Ms. Vanderburgh.

Ms. Vanderburgh's trial counsel challenged the sufficiency of these documents, arguing the State failed to present the best evidence of the conviction—a certified copy of the judgment and sentence—and therefore did not meet its burden of proving the existence of the prior conviction.  The trial court ultimately found the documents were sufficient to evidence a finding that Ms. Vanderburgh had the prior conviction.  She now argues appellate counsel was deficient for failing to raise this issue on appeal.

To support her argument, Ms. Vanderburgh points to *State v. Rivers*, 130 Wn. App. 689, 128 P.3d 608 (2005).  There, the court applied *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002), and held that the best evidence rule required the State to provide

a certified copy of the judgment and sentence to prove a prior conviction, unless the State could demonstrate the original writing was unavailable for reasons other than serious fault of the State. *Rivers*, 130 Wn. App. at 700-01.

However, as the State points out, our Supreme Court later revisited that rule and concluded that a conviction is not a "writing" as contemplated by the best evidence rule. *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 568, 243 P.3d 540 (2010). Instead, the court explained that "'other comparable documents of record or transcripts'" are admissible to establish criminal history regardless of whether the State can show the unavailability of the original certified copy of the judgment and sentence. *Id.* (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). Specifically, the court found that a driving abstract from the DOL and a DISCIS printout of the defendant's case history were sufficient to meet the State's burden of proving a prior conviction. *Id.* at 570.

Here, the State provided more than just the DOL record and DISCIS case history to prove Ms. Vanderburgh's prior conviction. It also provided a certified copy of the court docket showing the initial charge of DUI, the amendment down to first degree negligent driving, and Ms. Vanderburgh's final plea of guilty. Further, the State explained to the court that the original case file from her 1997 conviction was destroyed

18

in 2015. We conclude the documents presented by the State are sufficient under *Adolph* to establish Ms. Vanderburgh's prior conviction.

A petitioner claiming ineffective assistance of appellate counsel on collateral review must show "'the legal issue that appellate counsel failed to raise had merit'" and "'he or she was actually prejudiced by appellate counsel's failure to raise the issue.'" *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 308, 422 P.3d 458 (2018) (quoting *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004)). Here, Ms. Vanderburgh has failed to show that a challenge to the prior conviction evidence would have been successful. That is, she has failed to establish prejudice, which is fatal to a claim of ineffective assistance of counsel.

For the reasons stated above, we deny Ms. Vanderburgh's PRP.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Staab, J.

19